[No. 11988. In Bank. — May 12, 1890.]

ADELA A. TAFFT, Respondent, v. PRESIDIO AND FERRIES RAILROAD COMPANY, Appellant.

Corporation — Transfer of Stock by Agent to Himself — General Power of Attorney. — A general power of attorney authorizing an agent to sell, dispose of, transfer, and deliver all or any of the interests of the principal in the capital stock of any association or body corporate does not confer on him the power to transfer to himself the shares of the principal in the stock of a corporation, or to do anything in relation to such stock except for and in the name of the principal; and the surrender of such stock by the agent, without any indorsement thereon, and the exchange thereof for an equal number of shares issued to himself in his own name, is unauthorized and illegal.

ID. — SIGNATURE TO TRANSFER OF STOCK. — Under section 324 of the Civil Code, the signature of the proprietor, to whom a certificate of stock was issued, must be indorsed thereon by the proprietor or his attorney or legal representative, in order to effect a valid transfer of the stock, or to authorize the cancellation of the certificate, and the issuance of a new certificate to another.

ID. — CANCELLATION OF STOCK OF PRINCIPAL — SIGNATURE BY AGENT — TRANSFER WITHOUT SIGNATURE. — The indorsement of an agent's signature upon a certificate of stock issued to the principal, without stating the name of the principal, on whose behalf he gave the signature, cannot authorize the corporation to cancel the principal's certificate of stock; and a transfer or surrender of such certificate by the agent without any signature cannot place the corporation in any better position to justify such cancellation than if the certificate were indorsed by the agent merely in his own name, without mentioning the principal.

ID. — LIABILITY OF CORPORATION FOR CONVERSION OF STOCK ILLEGALLY CANCELED. — The owner of a certificate of stock has the right to rely on the observance by a corporation of its own by-laws and of the laws of the state with reference to the transfer and cancellation of stock, and may hold the corporation liable for the conversion of his stock, if canceled by its secretary without authority, upon the mere surrender of the certificate by another person, without the indorsement of transfer required by law.

ID. — IGNORANCE OF FRAUD OF AGENT — MAXIM. — The corporation, in such case, is not aided by the maxim that "where one of two innocent persons must suffer, the loss shall fall on him who has afforded the opportunity for the same," notwithstanding its ignorance of any fraudulent intent of the agent who surrendered his principal's certificate of stock without evidence of authority, and without written transfer, and took other certificates in his own name in exchange therefor, since it afforded the agent an opportunity to inflict loss upon his principal, and aided him in inflicting it.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Jarboe, Harrison & Goodfellow,* and *Lloyd & Wood,* for Appellant.

One at whose direction stock is transferred cannot object that the transfer is irregular. (Cook on Stock and Stockholders, sec. 374; *Insurance Co.* v. *Sherwood,* 72 Mo. 461.) The delivery of the certificate by one having a power of attorney will authorize the corporation to

enter a transfer. (*Colt* v. *Ives*, 31 Conn. 25; 81 Am. Dec. 161.) An indorsement in writing is not essential to a transfer or assignment of stock. (Lowell on Transfer of Stock, secs. 43, 122; Angell and Ames on Corporations, sec. 564; *Walsh* v. *Sexton*, 55 Barb. 251; *Grymes* v. *Hone*, 49 N. Y. 917; 10 Am. Rep. 313; *Allerton* v. *Lang*, 10 Bosw. 362; *Broadway Bank* v. *McElrath*, 13 N. J. Eq. 26; *Scripture* v. *Soapstone Co.*, 50 N. H. 583; *Baldwin* v. *Canfield*, 26 Minn. 526; *First National Bank* v. *Gifford*, 47 Iowa, 575; *State Bank* v. *Cox*, 11 Rich. Eq. 347; 78 Am. Dec. 458.) By-laws relating to the transfer of stock are for the sole benefit of the corporation. They confer a privilege on the company, which it may waive or assert at its pleasure. (*Black* v. *Zacharie*, 3 How. 513; *Commercial Bank* v. *Kortright*, 22 Wend. 362; 34 Am. Dec. 317; *Isham* v. *Buckingham*, 49 N. Y. 222; *Johnson* v. *Laflin*, 103 U. S. 804.) Even though such regulation is prescribed by statute, the same principles apply. (*National Bank* v. *Watsontown Bank*, 105 U. S. 217.) The defendant had no right to question the motives of plaintiff expressed through Bowman, or to ask his reason for the transfer. (*Brewster* v. *Sime*, 42 Cal. 143.) Unless the defendant knew or had reasonable grounds for believing that the transfer of stock by Bowman into his own name was for purposes other than for the plaintiff's benefit or use, it will be protected. (Lowell on Transfer of Stock, sec. 70; *State Bank* v. *Cox*, 11 Rich. Eq. 344; 78 Am. Dec. 458; *Field* v. *Schiefflien*, 7 Johns. Ch. 150; 11 Am. Dec. 441; *Albert* v. *Savings Bank*, 2 Md. 169; *Hutchins* v. *State Bank*, 12 Met. 421; *Ashton* v. *Atlantic Bank*, 3 Allen, 222; *Lowry* v. *Commercial Bank*, Taney, 330; *Crocker* v. *Old Colony R. R. Co.*, 137 Mass. 417.)

*Wilson & Wilson*, and *Samuel M. Wilson*, for Respondent.

Any cancellation of a certificate of stock without authority from the owner is a conversion by the cor-

poration. (Angell and Ames on Corporations, secs. 582, 583, and cases cited; *Davis* v. *Bank of England*, 2 Bing. 393; *Pollock* v. *National Bank*, 7 N. Y. 274; 57 Am. Dec. 520; *Cohen* v. *Gwin*, 4 Md. Ch. 357; *Selover* v. *American-Russ. Com. Co.*, 7 Cal. 266.) There can be no transfer of a certificate of stock, as distinguished from the entry of transfer, without the indorsement required by law. (Civ. Code, sec. 324.) The power of attorney did not authorize Bowman to sell or transfer stock to himself. (*Dupont* v. *Wertheman*, 10 Cal. 354; *Duff* v. *Duff*, 71 Cal. 533; *Mott* v. *Smith*, 16 Cal. 533; Story on Agency, secs. 208, 218; *Aberdeen R'y Co.* v. *Blakie*, 1 Macq. 461.) Any unlawful disposition of or act of dominion over the property of another is a conversion. (*Schroeppel* v. *Corning*, 5 Denio, 240; *Baldwin* v. *Cole*, 6 Mod. 212; *Murray* v. *Burling*, 10 Johns. 175; *Connah* v. *Hale*, 23 Wend. 466; *Covell* v. *Hill*, 6 N. Y. 374; *Dodge* v. *Meyer*, 61 Cal. 406; *Liptrot* v. *Holmes*, 1 Kelly, 381.)

SHARPSTEIN, J.—On the twenty-second day of October, 1874, the plaintiff executed to Arthur W. Bowman a power of attorney authorizing him to transact her business generally and particularly, "to invest all and singular such sums of money as may be in his hands belonging to me in such securities and upon such terms as he may think fit and for my interest; to sell, dispose of, transfer, and deliver all or any of my interests in the capital stock of any association, bodies corporate or politic, and to represent me and vote for me at any and all meetings of stockholders of any and all corporations in which I now or may hereafter hold or own shares of capital stock; and represent me and my shares of stock aforesaid in all matters and things touching the said shares and the acts and doings of the said corporations; also to bargain and agree for, buy, sell, mortgage, hypothecate, and in any and every way and manner deal in and with goods, wares, and merchandise, choses in

action, and other property in possession or in action; and to make, do, and transact all and every kind of business of whatever nature and kind soever; . . . . giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully, to all intents and purposes, as I might or could do if personally present."

This power of attorney continued in force until October 18, 1884, when it was revoked.

On and prior to the twenty-third day of May, 1882, the plaintiff was the owner of two hundred shares of the capital stock of the defendant corporation, which stood in her name on the books of the corporation, and for which a certificate, numbered 31, had been issued to her.

The defendant corporation was organized under the laws of this state for profit. Its by-laws regulating transfers of stock, so far as relevant to this case, are as follows: —

"Sec. 2. Every transfer of stock, or of the certificates above provided to be issued, shall be entered in the transfer-books, to be kept by the secretary, by an entry showing to and by whom transferred, the numbers and designations of the shares, and the date of the transfer, and duly attested by the secretary. No transfer shall be valid except as between the parties, unless made as in this section provided.

"Sec. 3. The stock shall be transferable as in the last preceding section specified, and upon the books of the corporation, upon proper assignment and delivery to the assignee of the certificates above provided for. . . . .

"Sec. 4. The surrendered certificate shall in all cases be canceled by the secretary before issuing a new one in lieu thereof."

On the nineteenth day of August, 1882, A. W. Bowman presented to the secretary of defendant the certificate of

stock No. 31, issued to the plaintiff as aforesaid, but not indorsed by her or by any other person for her; and at the same time presented to the secretary said power of attorney from the plaintiff, and demanded a transfer to himself, in his own name, of the two hundred shares of stock represented by certificate No. 31, then standing in her name on the books of the company. The secretary then received from Bowman the certificate No. 31, without indorsement, canceled it, made the transfer on the books as requested, and, in lieu of certificate No. 31, issued to Bowman, in his own name, two certificates of one hundred shares each, numbered respectively 211 and 212. At the time of this transfer the plaintiff was absent from this state, and actually knew nothing of it, and had authorized it in no other way than by said power of attorney.

On said nineteenth day of August, 1882, Bowman was largely indebted to divers persons in this state, and was then, and ever since has been, insolvent.

Thereafter, for a valuable consideration, Bowman assigned and transferred said certificates numbered 211 and 212 to the California Safe Deposit and Trust Company, a corporation, which took the assignment and transfer thereof in good faith without notice of the rights of the plaintiff. Plaintiff had no notice of this transfer and assignment of certificates Nos. 211 and 212 until after they were made, and did not authorize the same otherwise than by said power of attorney.

Bowman was a director of the defendant corporation from January, 1882, until October, 1884.

The defendant corporation never had any actual or presumptive notice that Bowman procured the transfer of said stock to himself for his own use, or that he intended to convert it to his own use, or to use it in any way prejudicial to the rights of the plaintiff, unless such notice may be presumed from the fact that he was one of the directors of the defendant corporation as above stated.

The action was brought by the plaintiff to recover from the defendant damages for an alleged conversion of said two hundred shares of stock, and the court found, — " 8.  That said defendant did, prior to the commencement of this action, convert and appropriate said two hundred shares of stock of the defendant, so belonging to plaintiff, and has wholly refused to return the same or any part thereof to plaintiff; and that, at the time of such conversion, the same was of the value of ten thousand dollars."

Judgment was accordingly rendered in favor of plaintiff for ten thousand dollars and costs.

Defendant moved for a new trial, on the ground, among others, of insufficiency of the evidence to justify the decision.  From the order denying the new trial, and also from the judgment, the defendant appeals.

The decision turns upon the construction of the power of attorney held by Bowman.  If it conferred on him the power to transfer to himself the stock of his principal, then the court below erred in finding that appellant converted respondent's stock.  Otherwise, not.  The authority conferred by the power of attorney is very general, but does not authorize the attorney to do anything except for and in the name of his principal.  The exchange of her shares for an equal number of shares to be issued to himself is not directly, nor in our opinion indirectly, authorized by anything contained in the power of attorney.  And it was not done for or in the name of the principal, nor in accordance with the by-laws of appellant or the provision of the code that such shares of stock may be transferred by indorsement by the signature of the proprietor or his attorney or legal representative.  (Civ. Code, sec. 324.)

Here the transfer in controversy was made without indorsement by the signature of the proprietor, or her attorney, or her legal representative.

In *Stockpole* v. *Arnold,* 11 Mass. 27, Parker, C. J., said:

"No person, in making a contract, is considered to be the agent of another, unless he stipulates for his principal by name, stating his agency in the instrument which he signs. This principle has long been settled, and has been frequently recognized; nor do I know an instance in the books of an attempt to charge a person as the maker of any written contract appearing to be signed by another, unless the signer professed to act by procuration or authority, and stated the name of the principal on whose behalf he gave his signature."

In this case there was no indorsement by signature, such as the law requires to effect a valid transfer, and if there had been, the agent's signature, without stating the name of the principal on whose behalf he gave his signature, would not have authorized the cancellation of the principal's certificate and the obliteration of all evidence of her ownership of stock.

Appellant is certainly in no better position now than it would be if the agent had indorsed the certificate by his own signature, without stating the name of his principal.

Respondent had a right to rely on the observance by appellant of its own by-laws and the laws of the state in the transaction of its business. Appellant was under no obligation to permit a transfer until the requirements of its by-laws and of the laws of the state were fully complied with.

"A purchaser of stock does not receive the certificate of his vendor, but a new one, made out in his own name, and reciting nothing contained in the former. He is therefore protected in the enjoyment of his purchase, even though there was no right to make the transfer to him. For this reason an unauthorized transfer is a wrong done to the owner of stock, for which not only the person who makes it, but any one knowingly assisting in the wrong, is responsible. That a bank or other corporation, and also these defendants, are trustees to a

certain extent for stockholders,—that is, for the protection of individual interests,—cannot be denied.   They are alike trustees of the property and of the title of each owner.   They have in their keeping the primary evidence of title, and they are justly held to proper diligence and care in its preservation.   From this it results that they may rightfully demand evidence of authority to make a transfer before they permit it to be done.   Their own safety requires that they be satisfied of the right of the person proposing to make a transfer to do what he proposes.   Generally, sufficient evidence of such right is found in the possession of legal title to the stock.   Yet it is well settled that it is not in all cases sufficient, notwithstanding that the true equitable ownership may be in some other than the holder of the legal right, and the transfer may be a gross wrong to such an equitable owner.   To that wrong the corporation or keepers of the register make themselves parties, if, with knowledge that there is no equitable right to transfer, they permit it to be done."   (*Bayard* v. *Farmers' and Merchants' Bank*, 52 Pa. St. 232.)

In *Selover* v. *A. R. C. Co.*, 7 Cal. 266, it is held that "where the *feme sole* becomes the owner of shares of stock in a company, and afterward marries, and after marriage the husband and wife execute an indorsement on the certificate of stock, purporting to sell the same to A, without any privy examination of the wife, and there being at the time no inventory of the separate property of the wife on record, that such a sale was void as against a subsequent purchaser, under an instrument duly signed and acknowledged."

No indorsement is not better than a defective indorsement, which was held in that case to be wholly ineffectual.   If an indorsement had not been considered necessary in that case, the court would not have written an elaborate opinion to prove that the indorsement was not such as the law required.   It would have disposed

of the case by holding that as no indorsement was required, it was immaterial whether the attempt to indorse had been successful or otherwise.

After a careful inspection of the power of attorney, we are unable to discover any clause which even constructively authorized Bowman to convert the shares of his principal into shares of his own. And that is precisely what he did, by the assistance of the appellant, without which he could not have converted them.

Appellant invokes the familar rule, " that where one of two innocent persons must suffer, the loss shall fall on him who has afforded the opportunity for the same." But it was the appellant, in this case, who afforded the agent an opportunity to inflict loss upon his principal, and also aided him in inflicting it.

As was said in *Bayard* v. *Farmers' and Merchants' Bank*, 52 Pa. St. 232, " with them [the corporation] was the registry, and transfers could be made only with their consent, by the surrender of the certificates and the issue of new ones."

We think it clear that a transfer not made by the party transferring, or some agent duly authorized, can have no effect. And we think, in this case, the transfer was not made by the owner of the stock or by an agent duly authorized to make it as it was made; and as respondent was divested of her property by the unauthorized act of appellant, it must be held responsible to her for the damage she has suffered in consequence of such wrongful act.

Judgment and order affirmed.

WORKS, J., FOX, J., and BEATTY, C. J., concurred.

Rehearing denied.