[Civ. No. 2484.  Second Appellate District, Division Two.—June 3, 1920.]

ANNA D. BUTTERS et al., Respondents, v. THE BRAWLEY STAR (a Corporation), et al., Appellants.

[1] CONTRACTS—SUBSCRIPTION CONTEST—AGREEMENT TO DELIVER AUTOMOBILE—SPECIFIC PERFORMANCE—COMMINGLING OF CAUSES OF ACTION—WAIVER OF OBJECTION.—In an action for specific performance of an agreement to deliver an automobile based upon the outcome of a newspaper subscription contest, the objection that the complaint states two causes of action commingled in one statement, if not raised by demurrer in the trial court, cannot be considered on appeal.

[2] ID.—RULES OF CONTEST—ADMISSION AFTER CLOSE OF PLAINTIFF'S CASE—CROSS-EXAMINATION OF DEFENDANTS' WITNESS.—In such action, a witness for the defendants having been questioned on direct examination in reference to a part of the rules of the contest, the trial court did not commit error in permitting the plaintiff, upon the cross-examination of such witness, to introduce the rules under which the contest was conducted.

[3] ID.—WITHDRAWAL OF CONTESTANT — CONTINUANCE OF NAME IN CONTEST CONTRARY TO RULES—RIGHT TO HIGHEST AWARD.—Where, after one of the contestants had withdrawn her name from the contest, agents of the proprietors of the paper, contrary to the rules of the contest, carried her name out as an active contestant to the end of the contest, she was not legally a contestant, and, notwithstanding that at the close of the contest she was credited with the highest number of votes, the contestant, legally in the contest, receiving the highest number of votes cast was entitled to the highest award offered.

[4] ID.—VOLUNTARY WITHDRAWAL OF CONTESTANT—RECEIPT OF HIGHEST NUMBER OF VOTES—ASSIGNMENT TO SUCCEEDING CONTESTANT—RIGHT TO ATTACK SUFFICIENCY OF.—The name of such withdrawing contestant having been carried in the paper as an actual contestant, and agents of the proprietors of the paper having procured votes to be cast for her, contrary to the rules of the company, to the end that at the close of the contest she was credited with the highest number of votes, and she thereupon having executed in favor of the contestant appearing as having received the second highest number of votes a writing in which the proprietors of the newspaper were directed to give the latter the highest award, "as she is the one who is entitled to it," the validity of such paper as an assignment, either as to its form or want of consideration, is not open to question by the proprietors of the paper.

[5] ID.—ABSENCE OF PROOF — DENIAL OF NONSUIT — DEFECT SUPPLIED BY DEFENDANTS.—In an action for specific performance of an agreement to deliver an automobile based upon the outcome of a newspaper subscription contest, error of the trial court in denying a motion for a nonsuit on the ground that plaintiff has not shown that her position in the contest was such as entitled her to the automobile will not justify a reversal on appeal of the judgment in her favor where the defect is supplied by evidence which the defendants thereafter introduce.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Affirmed.

The facts are stated in the opinion of the court.

Galen Nichols for Appellants.

Frank Birkhauser for Respondents.

THOMAS, J.—By this action plaintiff seeks specific performance of an agreement to deliver a certain Overland automobile, or the payment of the sum of $795, the value thereof, if delivery cannot be made, and general relief.

From the record we gather that defendants were the publishers of a newspaper called the "Brawley Star," at Brawley, Imperial County; that during a certain period— from May 13, 1916, to June 24, 1916, both dates inclusive— they conducted what is commonly known as a newspaper subscription contest, for the purpose of securing paid subscriptions for said newspaper; that as an inducement for candidates to obtain such subscriptions they offered as "first prize" a certain Overland automobile, the value of which, it is alleged, was $795, and for which plaintiff Anna D. Butters was one of the contestants; that for each paid subscription secured by any of the candidates a certain number of votes was credited to the contestant securing the same, or to whose credit a subscriber making a voluntary subscription might direct; and that at the end of such contest one Frances Blake, also a contestant, was declared to have received the largest number of votes, and was therefore claimed to be entitled to said automobile. It appears that thereafter said Frances Blake informed plaintiff that she—Miss Blake —was not entitled to the automobile in question, for the reason that she had not received 2,700,020 votes, as credited, but, on the contrary, that her total vote was not in excess of 150,000; while the plaintiff, in the same count, had received 1,497,000 votes. According to Miss Blake, one Keane, the manager of said contest and an employee of said defendants, had used her name, as hereinafter set forth, and that by right the auto should have been awarded to plaintiff. Miss Blake thereupon made, executed, and delivered to said plaintiff Anna D. Butters a "writing," which, in words and figures, is as follows: "Mr. De Rackin and Mr. Kintz: Please give the Overland automobile which I won through your contest to Mrs. Ralph Butters, as she is the one who is entitled to it. Frances Blake." (Mrs. Ralph

Butters and Anna D. Butters, one of the plaintiffs, appear to have been understood to be one and the same person.) In the complaint this instrument is referred to as an "assignment," and it is alleged that by it Frances Blake "assigned and transferred all her right, title, claim, and interest and any and all right she might or could have in and to said automobile to said plaintiff Anna D. Butters, for a valuable consideration." On the trial, however, the evidence shows that no consideration was given therefor. Thereafter plaintiff made demand on defendants for the delivery of the automobile, both by reason of the fact that she had actually received the highest number of votes in the contest and by virtue of the said "assignment," as the successor in interest of the rights, etc., of the aforesaid Frances Blake, which demand was not complied with by defendants, or any of them.

A general demurrer to the complaint was interposed. This was overruled by the trial court, which ruling is assigned as error.

Defendants answered, denying, except for certain formal portions of the complaint, all the material allegations thereof, and set up certain affirmative defenses, which, however, in view of the record, it is unnecessary here to set forth. After trial the court found for the plaintiff, and in due time judgment was entered accordingly, from which judgment this appeal is taken.

[1] It is urged by appellants that the complaint does not state a cause of action. In this connection appellants say: ". . . It is apparent that plaintiff intends to state two causes of action therein, which are commingled in one statement. One of these is: (a) that plaintiff received the highest number of legal votes cast in the contest, and therefore won the first prize; and the other is: (b) that plaintiff purchased, by assignment from Frances Blake, the latter's interest in the first prize." Although the complaint is far from what might be termed a model in pleading, we think it invulnerable to the general demurrer. Conceding specifications (a) and (b) of the argument above referred to to be well taken, and that if pressed in the trial court that court would not have hesitated in sustaining them, still it is beyond the power of this court to act thereon, under

the condition of the record before us. (Sec. 434, Kerr's Cyc. Code of Civ. Proc., and cases cited thereunder.)

The seventh finding of fact, as shown by the record, is as follows: "That Frances Blake quit and withdrew from said contest on about June 10, 1916, at a time when she had not to exceed 100,000 votes, and was out of the said contest from that time on. That the person or persons in the employ of said defendants, to wit: E. A. Keane and Paul Du Pron, who took up the list of said Frances Blake and concluded it of their own accord did not do so according to the rules of said contest, and their taking up the same was not according to the said rules of said contest; that by reason of the fact that the highest number of subscriptions credited to the contestant who was regularly in the contest according to the rules thereof, is to the plaintiff herein, Anna D. Butters, and she therefore had the highest number of votes to her account." From this it appears that whatever was done by Keane and Du Pron in connection with the contest was in violation of the rules thereof. [2] The evidence upon which that finding is based was elicited on cross-examination of the defendant De Rackin, after plaintiff's case in chief had been closed, and while the defendants were putting on their case, and was received over the objection of defendants' counsel. This witness was asked if he had the newspaper's issues between the dates of May 13, 1916, and June 24, 1916, and as to whether they contained the rules under which the contest was to be conducted. Upon his giving an affirmative answer to these questions, the witness was asked to produce them. This was objected to by defendant "on the ground that it is improper cross-examination, and if they were competent at all it is part of plaintiffs' case in chief; they are incompetent, irrelevant, and immaterial." This objection was by the court overruled. Counsel for defendants then made the following objection: "I want to object before you begin to read relative to the introduction of the papers; it is incompetent, irrelevant, and immaterial, and not proper cross-examination, and if competent at all should have been introduced in the plaintiffs' case in chief." This objection was also overruled by the court.

We have read the entire record. No doubt rests in our minds that the rulings made were correct. During the

examination in chief of the defendant De Rackin, he was asked the following questions relative to the rules of the contest, and gave the following answers thereto: "Q. Now, in regard to the rules of the contest; I will ask you whether or not a contestant could get credit for a slip mailed in with a subscription. A. Sure. Q. To be more definite, if I wanted to vote for Miss Blake, or one of those other ladies, I could have mailed to this office a check or money order, or anything else of that character that covered a certain amount of money, and then I would receive the paper and the votes would be put in the ballot-box? A. Yes, sir. Q. And would they or would they not go through the hands of the contestant in that case? A. Not necessarily." This was on direct examination of the defendants' said witness, in reference to a part of the rules of the contest, and opened the door for the cross-examination permitted by the court. We think, therefore, that the ruling on the objection was proper. By this line of examination defendants supplied evidence without which plaintiff might have failed.

It is next urged that the evidence is insufficient to support the judgment, for the reason (a) that the so-called assignment executed by Frances Blake as aforesaid "is not an assignment at all, but a mere expression of opinion," (b) that said assignment was given without consideration, and (c) was so executed and delivered "long after the said Frances Blake had sold whatever interest she had in the votes in said contest mentioned in said complaint, or the prizes to be won thereby, to another person." From the evidence it appears that plaintiff paid nothing for said "assignment." It also affirmatively appears that Frances Blake had, "about two weeks" before the contest closed, sold her votes to one Keane for twenty-five dollars, and thereafter took no further part in the contest, although her name continued to be carried in the "Brawley Star" as a contestant. The twenty-five dollars, however, were never paid to Frances Blake. It is further shown that one Du Pron, an employee of defendants, carried on the contest on behalf of said Frances Blake from the time of such sale and actual withdrawal by her from the contest to the close thereof, and solicited and secured subscriptions on his own behalf, and that of one E. A. Keane, a coemployee of

defendants, but in the name of said Frances Blake, and without her knowledge or consent. Because of this fact, we entertain serious doubt, even although we were to hold said "assignment" good, as to whether Frances Blake had any interest that she could assign or transfer. But with the record before us we think this point immaterial.

[3] The rules of the contest provided, among other things, as follows: "No employee or members of an employee's family will be allowed to enter the contest." Keane was the agent of the defendants Kintz, and De Rackin. Keane employed one Du Pron and others to represent Frances Blake, but without her knowledge, in gathering subscriptions to said paper, and ostensibly on account of the contest in question. At the close of the contest, as shown by the record, the standing of the contestants was as follows: Miss Frances Blake, 2,700,020; Mrs. Ralph Butters, 1,497,940; Mrs. J. E. Ramsdell, 577,740; Miss Naomi Campbell, 415,515; Mrs. Earl McReynolds, 322,555; Mrs. Joe Winters, 149,590. According to the testimony of Frances Blake, she had not to exceed 100,000 votes to her credit at the time of her transaction with Keane as aforesaid. There is no contradiction of this testimony, except the showing made by the defendants themselves, as above set forth, as to the standing and showing of the respective contestants. From the date of the transaction last referred to Miss Blake was in fact out of the contest. The activities of Keane and those working under him were in fraud of both the newspaper proprietors, whose agents they were, the other contestants, and those who subscribed under the false impression that they were doing so to help Miss Blake, because of a violation of the "rules of the contest" which we have already pointed out. We find no evidence that either Mr. Kintz or Mr. De Rackin, the proprietors of the "Brawley Star," had any personal knowledge of this violation of the rules mentioned. The evidence is conclusive that the name of Miss Blake was actually carried out as an active contestant to the end of the contest. This advertised fact, as we have already seen, was false. This was known to Keane, who was the agent of the defendants Kintz and De Rackin, and as such his knowledge, as a matter of law, was theirs. Under these conditions Miss Blake was not legally a contestant, and hence it naturally would follow that plain-

tiff, being the contestant, legally in the contest, receiving the highest number of votes cast, was entitled to the highest award offered. If this conclusion be correct, then the point which we are now discussing must be decided in favor of the plaintiffs.

This is the point which has given us much trouble. In its consideration many questions have come up. Is the person, under conditions, such as here exist, receiving the second highest number of votes so cast, but actually the highest number of votes cast for a *legal* contestant, entitled to the highest award? If so, is the principle involved in such a case as this different from that which prevails in an ordinary election contest? If a different principle prevails, what is the difference? Is it not possible that had Keane withdrawn Miss Blake's name from the contest and from the paper that the result might have been otherwise? These and many other questions have occurred to us.

In the case of *Bush* v. *Head*, 154 Cal. 277, [97 Pac. 512], the supreme court held that "an unworthy motive could not convert the exercise of this right the right to vote into an illegal vote, within the meaning of the code provisions under discussion." In this case a candidate for judgeship had made promises that if elected he would not qualify for the office, but, after election, failed and refused to carry out the promises so made. From this appellants argue that "the party getting the second highest number of votes, even though the motive of the one receiving the highest number is bad, does not obtain the office, the votes being legal, even though the motive is bad." In the case of *Heney* v. *Jordan*, 179 Cal. 24, [175 Pac. 402], the supreme court held that "a candidate who received next to the highest vote, the highest vote being obtained by the candidate for the nomination of another political party, which he did not receive, cannot be held to be the party candidate." The principle underlying the foregoing decisions does not, we think, maintain in the case at bar. In the foregoing cases there was the question of construction of both our constitution and statutes, and there was also one of public policy. There was no question of fraud, either actual or constructive, involved. In the case at bar, the decision hangs almost, if not quite entirely, on the fraud practiced by the agents of defendants—the arrangement by them with one

of the contestants legally in the contest by which the latter was to and actually did withdraw from the contest in favor of said Keane, which fact was kept from the public and the other contestants, as well as from the defendants Kintz and De Rackin. [4] The name of the withdrawing contestant, Frances Blake, was carried in the paper as an actual contestant. By this arrangement it was made possible for Keane and his subordinates to ascertain from time to time the relative standing of the various contestants in the contest, and what it would be necessary for them to do, or the number of subscriptions which it would be necessary for them to procure in order to lead in the contest. This arrangement, too, was an absolute violation of the "rules of contest," as we have already seen. Under these conditions we do not think the cases just referred to apply. We hold, therefore, that the point which we are now considering must be decided against appellants, for the reason (1) that we think that no one, save Frances Blake, can raise any question as to the validity of the "assignment" involved, either as to its form or want of consideration—and, so far as she is concerned, according to her own testimony it was given as an assignment of whatever right she may have had to the plaintiff herein—and (2) because it is immaterial, for the reason that at the time Frances Blake executed such purported assignment to plaintiff she had nothing to assign.

[5] At the close of plaintiffs' case defendants moved for nonsuit. The grounds of the motion for nonsuit did not include the fact that there was no evidence to show what the position of the plaintiff was in the contest. The only evidence of the number of votes polled for anyone was that of the testimony of Miss Blake, which was that *she* had "not to exceed 100,000 votes." These, as we have seen, she had sold. The motion for nonsuit was denied. We think properly so. (*Christenson Lbr. Co.* v. *Buckley,* 17 Cal. App. 37, [118 Pac. 466]; *De Leonis* v. *Hammel,* 1 Cal. App. 390, [82 Pac. 349].) Especially is this true when, even although granting that such ruling in certain cases were error,. that error in cured where the defendant, as in this case, supplies the defect by evidence which he himself introduces. (*Elmore* v. *Elmore,* 114 Cal. 516, [46 Pac. 458]; *Higgins* v. *Ragsdale,* 83 Cal. 219, [23 Pac. 316];

*Abbey etc. Assn.* v. *Willard,* 48 Cal. 614; *Winans* v. *Hardenbergh,* 8 Cal. 291; *Smith* v. *Compton,* 6 Cal. 24.) If there was any uncertainty as to the number of votes polled for plaintiff, irrespective of any rights which the said Frances Blake may have assigned to plaintiff, that was cleared away absolutely by a showing as to the number of votes polled for each purported contestant, and this included plaintiff. We think the evidence supports the judgment.

The next point urged is that "such decision and judgment is against law." We do not think it would serve any good purpose to quote the specifications urged in support of this contention. Suffice it to say that all have been considered, and we do not think the point well taken.

It is quite obvious now, we think, that the defendants Kintz and De Rackin, the owners, etc., of the "Brawley Star," are free from actual fraud. The fact is, too, that they have paid the sum of $700, which was made possible by the "rules of the contest" to be accepted in lieu of the automobile, to said Keane. But Keane, being, by the rules of the contest, ineligible as a contestant for the reasons already stated, was not entitled to the same. His fraud was, as a matter of law, chargeable to the defendants Kintz and De Rackin. The plaintiff is also entirely free from any taint of such fraud, practiced as stated by said persons.

We hold, therefore, that the plaintiff was the contestant legally in the contest receiving the highest number of votes so polled, and was entitled to the highest award. The rule applies that where one of two innocent persons must suffer by the fraudulent act of a third, it must be he who trusted most, or he whose misplaced confidence enabled the wrong to be committed. (*Ruiz* v. *Norton,* 4 Cal. 355, [60 Am. Dec. 618]; *Poorman* v. *Mills & Co.,* 39 Cal. 345, [2 Am. Rep. 451]; *Bedell* v. *Herring,* 77 Cal. 572, [11 Am. St. Rep. 307, 20 Pac. 129]; *Tafft* v. *Presidio etc. R. Co.,* 84 Cal. 131, [18 Am. St. Rep. 166, 11 L. R. A. 125, 24 Pac. 436]; *Blaisdell* v. *Leach,* 101 Cal. 405, [40 Am. St. Rep. 65, 35 Pac. 1019].)

No other point urged needs consideration.

Judgment affirmed.

Finlayson, P. J., and Weller, J., concurred.