# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF CALIFORNIA.

## JOHN M. QUAY, EXECUTOR, ETC., RESPONDENT, v. PRESIDIO AND FERRIES R. R. CO., APPELLANT.

POWER OF ATTORNEY — SPECIAL AGENCY — EXCHANGE OF STOCK — CONVERSION BY CORPORATION — TROVER. — A power of attorney authorizing many things specially mentioned, and among other things the exchange of old certificates of stock for new ones in lieu thereof, and concluding with general words giving power to manage and control all property, real or personal, belonging to the principal, to transact all business, and to make all contracts and instruments requisite or proper to effectuate all or any of the premises. is a special and not a general power, and creates only a special agency within the meaning of section 2297 of the Civil Code.   It does not confer express or implied power to sell, hypothecate, or transfer the stock of the principal.   The corporation is bound to know the authority of such special agent, and if it cancels the stock and transfers the same to another upon its books, without any other indorsement upon the certificate than that of the holder of the power of attorney, it is liable in trover for a conversion of the stock.

ID. — OSTENSIBLE AGENCY — PRESUMPTION. — Section 2317 of the Civil Code, in regard to ostensible agency, does not apply to the case of a special agent whose powers are carefully defined by a written instrument, which the party dealing with the agent must be presumed to have seen and examined.

ID. — RATIFICATION. — When an agent under one power of attorney delivers a certificate of stock to an agent under another power from the same principal, and the latter agent exceeds his power in transferring the stock, in which the corporation wrongfully assist, a declaration of the

LXXXII. CAL.—1

principal to the first agent that he will not hold him responsible, and that he would have loaned the stock to the other agent if requested, does not prove a ratification of the unauthorized transfer of the stock or of the wrongful action of the corporation.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Lloyd & Wood,* and *Jarboe, Harrison & Goodfellow,* for Appellant.

*Edward J. Pringle,* for Respondent.

Fox, J. —John G. Kellogg, respondent's testator, was the owner of two hundred shares of the stock of the corporation defendant, evidenced by certificate No. 27, issued in the name of said Kellogg, May 3, 1882.

On June 17, 1884, Kellogg was absent from this state, and A. W. Bowman and Joseph M. Quay each held powers of attorney from him, in full force, and each was acting as his attorney in fact in the conduct of his business. When he went away Kellogg left this certificate in possession of Quay, and on or about the said 17th of June Bowman went to Quay and asked Quay to let him have the certificate, as "he wanted to sell one hundred shares, and he did not want to have it appear on the books that he was selling his own stock." Quay delivered the certificate to him, as requested, and thereupon Bowman indorsed the certificate, "Jno. G. Kellogg, by A. W. Bowman, his attorney in fact," and sent it to the office of the company, where, in pursuance with his request, two new certificates were issued in lieu thereof, each for one hundred shares, one in the name of said Kellogg and the other in the name of George F. Bowman, trustee. The new certificate issued in the name of Kellogg was delivered to A. W. Bowman, and by him delivered to Kellogg after the latter's return. The certificate issued in the

name of George F. Bowman, trustee, was delivered to
him, and by him sold to one Bradley, for the benefit of
A. W. Bowman, the certificate therefor being numbered
363. After Kellogg's return he had a conversation with
Quay, in which the latter informed him of the transac-
tion between himself and Bowman, when Kellogg said:
" Personally, Quay, I don't hold you responsible. Had
Bowman asked me to loan him the stock, my relations
were such with him that I would have let him have it."

This action was brought by Kellogg against the cor-
poration defendant, for the sum of six thousand five
hundred dollars damages for the unlawful conversion
of the hundred shares of stock, part of the said two
hundred shares, so represented by said certificate No.
363. Kellogg died pending the suit, and Quay, his
executor, was substituted as plaintiff. Plaintiff had
judgment, motion for new trial made and denied, and
defendant appeals from both the judgment and order.

On the appeal two points are made: 1. That the court
erred in denying defendant's motion for nonsuit. The
case upon this point depends upon the construction to
be given to Bowman's power of attorney.

The by-laws of the company, as is usual in such cases,
provided that stock could be transferred on the books of
the company by the delivery of the old certificate prop-
erly indorsed, and the issue of new certificate or certifi-
cates therefor, the old certificate to be at the same time
canceled. The certificate in this case was delivered as
before stated, indorsed, " Jno. G. Kellogg, by A. W.
Bowman, his attorney in fact." Before canceling that
certificate, and issuing new ones in its place, it was the
duty of the corporation to know whether it was properly
indorsed; in other words, to know whether Bowman held
a power of attorney authorizing him to make such in-
dorsement, and if he did, whether there was any limita-
tion as to the purpose for which he was authorized to
make it.

An inspection of the power of attorney shows that it was not general, but special; it created, not a general but a special agency, within the meaning of section 2297, Civil Code, cited by appellant. Under it he had authority to do many things, but no authority to do anything except such as was therein especially mentioned, or those things necessarily incident to the execution of the powers specially mentioned. So far as relates to the powers granted in dealing with corporations, and with the stocks thereof, it reads: "For me, and in my name, and on my behalf, . . . . at any and all meetings of stockholders of companies or corporations in which I now have or may hereafter have stock, to appear and vote on such number of shares as I may at such time be entitled to vote; to exchange old issues or certificates, and receive new issues or certificates in lieu thereof." And it gives like special power in reference to many other things, among them to the recovery of the possession of and leasing of lands, collection of rents, the payment of taxes, and the like. But it nowhere, either in express words or by implication, gives any power to sell, mortgage, or hypothecate, or otherwise transfer, any of the property of his principal. It does conclude with these general words: "And generally to manage and control to my best interest and advantage all my property, real and personal, to transact all business, make, execute, acknowledge, and deliver all contracts, deeds, writings, assurances, and instruments which may be requisite or proper to effectuate all or any of the premises, with the same power, and to all intents and purposes with the same validity, as I could if personally present." It will be observed that these words, although general in form, and full as to the designation of papers which may be executed, expressly limit the execution of such papers to such as "may be requisite or proper to effectuate all or any of the premises." What premises? It can be none other than

such as were thereinbefore mentioned.    These included, among other things not before mentioned, the power to make compromises and releases in certain cases; but none of them included power of sale or transfer of property, real or personal.

When, therefore, certificate No. 27 was presented to the defendant, it was properly indorsed to authorize its cancellation and the issue of new certificates in lieu thereof, but it was not properly indorsed to authorize the transfer of the stock which it represented to any other person.    The only authority which that indorsement gave to the company was to cancel that certificate, and issue one or more new ones, representing the same number of shares, to John G. Kellogg.    And it was just as incumbent upon the corporation to know this fact as it was to know that Bowman had authority to indorse for any purpose.

Section 2317 of the Civil Code is cited in justification of the company in acting as it did in allowing that transfer of the hundred shares of stock, but we do not think it covers the case.    It reads: "Ostensible authority is such as a principal, intentionally, or by want of ordinary care, causes or allows a third person to believe the agent to possess."    In this case more than ordinary care was taken to define the powers of the agent, and the company, with that written limitation of his powers before it (for it must be presumed to have seen and examined the power, else it would not have acted at all), aided and assisted the agent in exceeding his powers, and allowed a transfer of stock which it was wholly unauthorized to do.

A point is made on the use of the word "exchange," as found in the power of attorney; but the very connection in which it is used shows that it was limited to an exchange of old certificates for new ones, and did not authorize an exchange or transfer of the property represented by the certificate.    The cases cited in this con-

nection are therefore not in point. It must be held that this power, while it authorized the exchange of old certificates for new ones, did not authorize a transfer of the property. (*Lord* v. *Sherman,* 2 Cal. 498; *Billings* v. *Morrow,* 7 Cal. 171; *Treat* v. *De Celis,* 41 Cal. 201.)

The remaining point is, that the transfer was ratified by Kellogg when he told Quay that he would not hold him responsible, etc. We cannot so regard the effect of that conversation. In it no reference was made whatever to the act of either Bowman or the company in transferring the stock. The sole subject of consideration at that time was the act of Quay in delivering the certificate to Bowman. The act of Quay, for which Kellogg said that he would not hold Quay responsible, was simply the act of delivering certificate No. 27 to Bowman, another attorney in fact of Kellogg's, and one who, as shown by the two powers of attorney, both of which are given in the transcript, had more ample powers than Quay himself; for the powers of both were limited, and those of Quay were limited to a less number of subjects than those of Bowman; in fact, Quay had no power except that of making collections and giving receipts and acquittances for moneys collected. The conversation had no relation whatever to the disposition which had been, or might have been, made by Bowman of the stock, or to Bowman's power in the premises, or to the act of the company in making a transfer of the stock on its books not authorized by the owner thereof, either in person or by attorney.

It cannot be held that there was an implied ratification by acts *in pais,* for the principal received no benefit from the act of his agent. The case does not come in any sense within the provisions of section 2310 of the Civil Code on the subject of ratification. The case of *Treadwell* v. *Davis,* 34 Cal. 605, 94 Am. Dec. 770, cited by appellant, is not in point. That is the case of two lien-holders, each holding as security for debt. The

holder of the first lien received his money from the holder of the second lien, and assigned over his claim, so that the latter held the property for both amounts. Afterward the debtor said it was all right, he was glad the arrangement had been made, and that was held to be a sufficient ratification of the assignment. There the debtor lost nothing, but rather gained an advantage by the transaction, in the way of forbearance on the first debt. So with the other cases cited by appellant; they do not seem to have any application to the facts of this case. Nothing in the record in this case implies a ratification of the unauthorized act of Bowman, or of the act of the defendant, done in contravention of law and of its own by-laws, in transferring on its books to a stranger the title to one hundred shares of its stock, without proper indorsement and surrender of the old certificate for the same shares.

Judgment and order affirmed.

WORKS, J., and PATERSON, J., concurred.

Hearing in Bank denied.