[Civ. No. 3508.   Second Appellate District, Division Two.—February 17, 1922.]

## G. B. MIER, Respondent, v. SOUTHERN CALIFORNIA ICE COMPANY (a Corporation), et al., Appellants.

[1] CONVERSION—WRONGFUL SALE—JOINT JUDGMENT.—Where a corporation, acting through its authorized foreman, sells a traveling crane and receives the purchase price under an agreement whereby delivery is to be made at a subsequent date when dismantled, but thereafter an interlocking corporation, acting through an agent of both corporations, who knew the rights of the first purchaser, sells such crane to a third party, and permits it to be shipped to that purchaser, both corporations are guilty of a joint conversion and are jointly liable to the first purchaser, notwithstanding they did not jointly contract to sell and deliver to him.

[2] ID.—EXERCISE OF ACTS OF OWNERSHIP.—Any act of ownership or exercise of dominion over the property of another, in defiance of his rights, is a conversion of that property.

[3] ID.—JOINT CONVERSION—ACTS OF SEVERAL PERSONS.—Where the conversion is the result of the acts of several persons, which, though separately committed, all tend to the same end, there is a joint conversion.

[4] ID.—DEMAND UNNECESSARY.—Where there has been an actual conversion—such as selling and delivering the property to some third person in defiance of the rights of the true owner—a demand before suit is not necessary.

[5] ID. — DAMAGES — EVIDENCE. — Notwithstanding the price plaintiff paid for the crane, the testimony of plaintiff and one of his witnesses, each of whom qualified as an expert on the value of second-hand machinery and equipment, that the reasonable market value of the crane was fifteen hundred dollars was sufficient to justify the verdict of the jury assessing the plaintiff's damages in the sum of six hundred dollars.

[6] ID.—RIGHT TO DAMAGES—SUBSEQUENT TENDER OF PROPERTY IMMATERIAL.—When plaintiff's property was sold by defendants without authority and by them shipped to the purchaser in defiance of plaintiff's rights, plaintiff's right to damages was then and there complete, and no subsequent offer on the part of defendants to return his property could defeat his rights.

[7] ID.—JOINT CONVERSION — INSTRUCTIONS. — The uncontradicted evidence having shown that the defendants were jointly guilty of the conversion of plaintiff's property, although only one of them was a party to the contract of sale to plaintiff, the defendants were not prejudiced by the giving of an instruction to the effect that if both of the defendants were parties to the contract of sale to plaintiff the fact that one of them did not own the crane would not relieve it from liability to plaintiff; in fact, such instruction was more favorable to them than it should have been.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Paul J. McCormick, Judge.

The facts are stated in the opinion of the court.

Sidney J. Parsons for Appellants.

Charles J. Kelly, D. A. Stuart and I. B. Benjamin for Respondents.

FINLAYSON, P. J.—This is an action to recover damages for the conversion by defendants of a crane and its equip-

ment. The complaint alleges that the crane was sold to plaintiff by defendants under an agreement to make delivery when requested. The case, which was tried before a jury, was submitted upon the evidence adduced by plaintiff, defendants having elected not to present any evidence. The jury returned a verdict for the plaintiff, assessing his damages in the sum of $600. From a judgment on that verdict, defendants appeal, contending that the evidence is insufficient to justify the verdict in that there was no evidence of a conversion, or of a demand for the return of the property, or of damages to plaintiff, and that the court erred in excluding a certain document that was offered by defendants on their cross-examination of plaintiff, and likewise in giving certain instructions.

The evidence, which is without conflict, discloses the following facts: The defendant Los Angeles Ice and Cold Storage Company—hereafter, for brevity, referred to as the Los Angeles Company—is a corporation with its principal place of business in the city of Los Angeles. The other defendant, the Southern California Ice Company—hereafter, for brevity, referred to as the San Bernardino Company—is likewise a corporation, and has its principal place of business in the city of San Bernardino. W. R. Plue is the purchasing agent of the former company, as well as an agent for the San Bernardino Company. Indeed, the two companies appear to be closely interlocked. Such, at any rate, is the inference that is warranted by certain statements in appellants' brief, where we are informed that "the officers and agents of the defendant Los Angeles Ice and Cold Storage Company were the agents of the Southern California Ice Company"; also that Louis Hill, who is the foreman of the San Bernardino Company, "attended to its business at San Bernardino, *under the direction of the officers of the company mentioned in Los Angeles*"—that is, under the direction of the officers of the Los Angeles Company.

Shortly prior to August 11, 1919, plaintiff received through the mail a statement put out by the Los Angeles Company purporting to contain a list of second-hand machinery which that company had for sale. Whereupon plaintiff called upon Plue, who informed him that the machinery was located at San Bernardino, and was given an order on Hill, the foreman of the San Bernardino Com-

pany, directing the latter to show plaintiff two compressors, a part of the advertised machinery. Thereupon plaintiff went to San Bernardino, saw Hill, and was shown the two compressors. At the same time, Hill, on behalf of his company, told plaintiff that he had a ten-ton traveling crane that he wanted to sell. Plaintiff, on August 11, 1919, purchased the two compressors and the crane for the aggregate sum of $450. The sale was made to plaintiff by Hill, acting for and on behalf of the San Bernardino Company, if not for both companies. Plaintiff immediately paid Hill $50 on account of the purchase price, and agreed to pay the balance to the Los Angeles Company upon his return to Los Angeles. This he did on August 24, 1919, by a check for $400 payable to the order of the Los Angeles Company. When plaintiff was purchasing the crane and the two compressors, Hill, who was then engaged in dismantling those pieces of machinery, said that it would be a favor to him if plaintiff would leave the crane where it was for a short time, as it would suit him if he could dismantle it later. Plaintiff acceded to this proposition, telling Hill that when the latter should have dismantled that piece of machinery he could notify plaintiff, who would then return to San Bernardino and get the crane. It was agreed that delivery of the crane should be made on the sidewalk at San Bernardino. By this, we presume, was meant the sidewalk in front of the plant of the San Bernardino Company. Some time in the month of September following, plaintiff, having received no word that the crane was ready for delivery, wrote a letter of inquiry to Hill. No reply was made to this letter. Shortly thereafter plaintiff, while the crane was, as he supposed, still in San Bernardino in the possession of the San Bernardino Company, entered into a contract with a party in San Francisco whereby he agreed to sell the crane to the latter for the sum of $600, f. o. b. San Bernardino. Subsequently this person rescinded his agreement to buy the crane from plaintiff because the latter was unable to make delivery owing to the fact that defendants, unknown to plaintiff and without authority, had sold and shipped the crane to another party. It seems that some time in the middle of October, 1919, plaintiff called on Plue at the latter's office in Los Angeles, and was informed by that agent of the Los Angeles Company that

he had sold the crane, that it had been shipped to the purchaser, and that he did not know where it then was. The crane, it seems, was sold by the Los Angeles Company to a third party and was shipped out of San Bernardino on or about October 4, 1919, which was some two or three weeks after plaintiff had agreed to sell the crane for $600 to the party in San Francisco, but before that person had rescinded his agreement to purchase. When plaintiff called upon Plue and spoke to him about the crane, some time in the middle of October, 1919, Plue asked plaintiff if it would satisfy him to have the crane delivered to plaintiff's purchaser in San Francisco. Plaintiff replied that it would not, as he already had lost the sale to his San Francisco buyer. At the date of the trial, September 23, 1920, the crane was in Los Angeles in the plant of the Los Angeles Company. At that time it was not in the condition in which it was when plaintiff bought it—a number of parts had been broken and much of it was missing. On March 13, 1920, which was more than three months after this action was commenced, Plue offered to deliver the crane to plaintiff, but the latter refused to take it.

[1] We think it clear that the evidence is sufficient to show a conversion of the crane by both defendants. The case seems to have been tried in the lower court upon the assumption that, in order to hold both defendants liable, it must appear that they had jointly contracted to sell and deliver the crane to plaintiff. This is an entirely erroneous theory. Plaintiff is not suing for a breach of contract. He is not suing for a mere failure to comply with that part of the contract of sale whereby Hill, on behalf of his company, had agreed to notify plaintiff when the crane was dismantled and to make delivery on the sidewalk at San Bernardino. He is suing for a tort—for the conversion of the crane—which unquestionably occurred when, about a month and a half after plaintiff had purchased it, the Los Angeles Company sold it and permitted it to be shipped out of San Bernardino. To sustain the verdict against both defendants all that it was necessary to show was that plaintiff was the owner, entitled to possession of the crane, and that defendants, as joint tort-feasors, had converted it. The first of these requisites, plaintiff's title and right to possession, is conceded. It is expressly averred by defendants in their

answer that the San Bernardino Company had "sold . . .
to plaintiff two certain compressors and one crane and its
equipment." It is of no moment how plaintiff received his
title and right of possession. It matters not whether it
came to him under a contract made with both of these de-
fendants or with but one of them, or whether he received
title from an entirely different source. It is enough that
plaintiff had the title and the right of possession. Having
the title and right of possession, he is entitled to a joint
judgment against these defendants if they jointly converted
his property. That defendants were guilty of a joint con-
version is clear. After the crane had been sold to plaintiff
and subsequently to the time when he was entitled to have
it delivered to him on the sidewalk in San Bernardino, the
Los Angeles Company, wrongfully and with knowledge of
plaintiff's rights, sold it to a third party, and permitted it,
or all but the rails, to be shipped to that purchaser. Both
Plue and Hill knew that plaintiff had purchased the crane,
and both were well aware of his rights. This unauthorized
sale by the Los Angeles Company was, without doubt, an exer-
cise of dominion over plaintiff's property, in defiance of his
rights, and an actual conversion. [2] Any act of ownership
or exercise of dominion over the property of another, in de-
fiance of his rights, is a conversion of that property. (*Rey-
nolds* v. *Shuler,* 5 Cow. (N. Y.) 323; *Bancroft-Whitney Co.*
v. *McHugh,* 166 Cal. 143 [134 Pac. 1157].) And the gen-
eral rule is that one who sells the property of another, even
though he believes he has the right so to do, is liable in
trover to the true owner. (*Swim* v. *Wilson,* 90 Cal. 126 [25
Am. St. Rep. 110, 13 L. R. A. 605, 27 Pac. 33]; *Clark* v.
*Whiteus* (Okl.), 171 Pac. 746; 28 Am. & Eng. Ency. of
Law, 2d ed., 702.) In this connection see, also, *Green* v.
*Bennett,* 23 Mich. 464, and *Koon* v. *Brinkerhoff,* 39 Hun
(N. Y.), 130. Without doubt, therefore, the defendant Los
Angeles Ice and Cold Storage Company, by whom the
unauthorized sale to the third party was made through its
agent Plue, was guilty of a conversion of plaintiff's prop-
erty. Equally certain is it that the other defendant, as
an aider and abettor of the Los Angeles Company, par-
ticipated in this conversion, and that, therefore, there was a
joint conversion by both defendants. As we have seen,
Plue, who appears to have been an agent of each of these

ice companies, sold the crane after it had been bought and paid for by plaintiff. A truckman, acting for the third party to whom Plue had thus wrongfully sold plaintiff's property, went to San Bernardino, saw Mr. Hill, told the latter that the crane had been sold by Plue, or, at any rate, showed him the bill of sale, and was permitted by Hill to cart it away on his truck. Upon these facts the San Bernardino Company unquestionably was, knowingly, a party to the transaction whereby the crane was sold and shipped away after it had been sold to plaintiff, and, therefore, was jointly liable with its codefendant for the conversion.    [3] Where the conversion is the result of the acts of several persons, which, though separately committed, all tend to the same end, there is a joint conversion. (*Cram* v. *Thissell*, 35 Me. 86; 38 Cyc. 2055.)

[4] No demand was necessary. When sold to him by the San Bernardino Company, the crane became plaintiff's property, and its subsequent unauthorized sale and shipment to another purchaser—the result of the acts of both defendants—was of itself a conversion. The rule is that where there has been an actual conversion, a demand upon the defendant before the institution of the action of trover is not necessary. For, since demand and refusal do not of themselves constitute conversion but are only evidence from which conversion in certain cases may be found (*Steele* v. *Marsicano*, 102 Cal. 666 [36 Pac. 920]), the conversion may be established by proof of other acts on the part of the defendant, such, for instance, as selling and delivering the property to some third person in defiance of the rights of the true owner. (*May* v. *O'Neal*, 125 Ala. 620 [28 South. 12]; *Courtis* v. *Cane*, 32 Vt. 232 [76 Am. Dec. 174]; *Clark* v. *Whiteus, supra;* 28 Am. & Eng. Ency. of Law, 2d ed., 697.)

[5] Plaintiff and one of his witnesses, each of whom qualified as an expert on the value of second-hand machinery and equipment, testified that the reasonable market value of the crane was $1,500. The jury assessed plaintiff's damages in the sum of $600—the amount that plaintiff's prospective purchaser at San Francisco had agreed to pay for the crane, but did not because plaintiff was unable to make delivery owing to the acts of conversion on the part of these defendants. The uncontradicted testimony of plaintiff

and his witnesses that the crane was reasonably worth $1,500 was sufficient to justify a verdict for at least $600.

[6] In the answer filed by them in this action, defendants allege that the defendant Southern California Ice Company is ready and willing to deliver the crane to plaintiff. Thereafter, namely, on March 13, 1920, which was about three and a half months after the commencement of the action, defendants served upon plaintiff a document containing a copy of the averment in their answer expressing the then willingness of the San Bernardino Company to deliver the crane to plaintiff. Defendants offered this document in evidence during their cross-examination of the plaintiff. The court sustained plaintiff's objection to the offer, and that ruling is now assigned as error. The action is not to recover the crane, but damages for its conversion. As we have shown, these defendants co-operated in the conversion of the crane when the Los Angeles Company wrongfully sold it to a third person after plaintiff had acquired the title and the right to possession by his purchase from the San Bernardino Company. When his property was thus sold and shipped to another in defiance of his rights, plaintiff's right to damages was then and there complete, and no subsequent offer to return could defeat his right of action. No such eleventh-hour repentance could undo the conversion already committed or purge it of its wrongfulness. If authority were needed for so plain a proposition, reference might be had to *Reynolds* v. *Shuler,* 5 Cow. (N. Y.) 323.

[7] The court instructed the jury to the effect that if both of the defendants were parties to the contract of sale to plaintiff, the fact that one of them did not own the crane would not relieve it from liability to plaintiff. Defendants cannot complain of this instruction. It was more favorable to them than it should have been. In giving it, the court evidently proceeded upon the theory that defendants could not be held jointly liable in this action unless it were made to appear that they had jointly made the contract of sale to plaintiff. With plaintiff's title and right of possession established by the sale which it is conceded was made to him by the San Bernardino Company, defendants would be jointly liable if they jointly converted plaintiff's property. That they were guilty of a joint conversion was, as we have shown, established beyond peradventure by the uncontra-

dicted evidence in the case. The giving of this instruction, therefore, was not prejudicial error, even though it may be based upon an erroneous theory respecting the ground for defendants' liability.

Finally, appellants complain of an instruction whereby the jurors were advised as to what is sufficient to constitute a legal demand. Since there was no necessity for any demand, for the reason that defendants' joint participation in the sale and delivery of the crane to the third party was itself an actual joint conversion, appellants' criticism of the instruction does not call for discussion.

The judgment is affirmed.

Works, J., and Craig, J., concurred.