[L. A. No. 16307. In Bank.—October 4, 1937.]

HERBERT HELLMAN ARONSON et al., Appellants, v. THE BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent.

Mitchell, Silberberg, Roth & Knupp and Livingston & Livingston for Appellants.

Freston & Files, Edmund Nelson, G. L. Berrey, James A. McLaughlin, Louis Ferrari, Ralph E. Lewis, O'Melveny, Tuller & Myers, Louis W. Myers, Louis Ferrari, Ralph E. Lewis and Sydney Wetzler for Respondent.

NOURSE, J., *pro tem.*—This appeal is taken from a judgment of dismissal entered after a general demurrer to plaintiffs' complaint was sustained without leave to amend. Before entry of the judgment, plaintiffs were allowed by stipulation to tender an amended complaint, leave to file which was denied after a full hearing. A bill of exceptions was settled and filed wherein the sole specification of error is the denial of leave to amend. Inasmuch as the proposed amended complaint fails to cure the matters hereinafter noted, we will confine our review to the question whether the complaint states a cause of action.

The action was commenced in July, 1935, against respondent bank and Marco and Irving Hellman to recover damages for the alleged conversion of certain shares of stock of the Hellman Commercial Trust and Savings Bank and of the Merchants National Trust and Savings Bank. It does not appear that either of the Hellmans was served with process. The defendant bank was sued as the successor to the business of the two banks named.

In 1920 plaintiffs' mother, Amy Hellman Aronson died intestate, leaving as her sole heirs the plaintiffs, who were minors. The two Hellmans were appointed as administrators and still continue to act as such, and the administration of the estate is still pending. In October, 1925, after settlement of their account as such, the entire estate was distributed to these plaintiffs, the decree expressly including all property of every kind and nature belonging to the estate, whether described in the decree or not. All the stock in question was inventoried as an asset of the estate, but it is alleged that no accounting of the transfers complained of was made to the probate court. Complaint is made of four separate wrongful transfers, two made prior to the date of distribution, and two made thereafter. The old certificates standing either in the

name of the deceased or in the name of the estate were for shares of stock in the banking corporations named, of which both administrators were either directors or officers or both. The old certificates were cancelled and new certificates issued without order of court or other authority, some on the endorsement of both administrators, others on endorsement of one administrator only. Though the complaint alleges that it was the intention and *purpose* of the Hellmans in changing the certificates "to use and dispose of the shares represented thereby for their individual benefit and profit", it does not allege that they did so use the shares nor that they have ever disposed of any of them.

This is the outstanding weakness of the complaint. Conversion implies "some act of ownership or exercise of dominion over the property of another in defiance of his rights". (24 Cal. Jur., p. 1022.) It is "the unwarranted interference by defendant with the dominion over the property of the plaintiff". (*Byer* v. *Canadian Bank of Commerce,* 8 Cal. (2d) 297 [65 Pac. (2d) 67].) The allegations of an unlawful purpose in the minds of the Hellmans (but with no allegation of a consummation of such or any other purpose) fall far short of an allegation that those defendants interfered in any manner with the "dominion" of the plaintiffs. In the absence of allegations to the contrary we must presume that they are still acting as administrators of the estate. As such they were entitled to exercise "dominion" over all the personal property of the estate. In that capacity their possession was not an interference with the "dominion" of the heirs; they held for the heirs and not adversely to them. We must further presume that their acts were "fair and regular", and that they were "innocent of crime or wrong". (Code Civ. Proc., sec. 1963.) If these presumptions do not apply it is incumbent upon the pleader to rebut them by clear and positive allegations. But the complaint does not plead any facts upon which even an inference of fraud, wrong, or unfair dealing may be founded. The only reasonable inference that could be drawn from the facts pleaded is that, for some reason not disclosed in the pleadings, the names on the certificates were changed, but that the Hellmans still hold the shares *as administrators* for the use and benefit of the plaintiffs. Therefore, assuming that the original banks were guilty of a conversion when they transferred the shares, there are no facts pleaded show-

ing that the plaintiffs suffered any injury in the transactions. As stockholders in the selling banks, they would be entitled to their proportionate part of the sales to the respondent. But they do not allege whether they received these proceeds, or whether they are held in the estate for them awaiting distribution, or held by the selling banks for the same purpose. The allegation that they received no "consideration" for these transfers and that the value of the "shares" has been lost does not meet this objection since the "consideration" might be still awaiting their demand. The complaint alleges that the respondent purchased the "banking business" of the Merchants National Trust and Savings Bank and succeeded to all "its property assets and business generally". But it is silent as to the disposition of the proceeds of the sale, and does not plead a demand on the selling bank nor that such bank is not able to respond. It is also silent as to any charges of actual fraud on the part of any of the banks. Thus, so far as appears from either complaint, the entire proceeds of the sales may still be held by the selling banks awaiting distribution to the stockholders according to their respective interests; and, since the possession of the administrators of the stock certificates is but evidence of the interest of plaintiffs in the shares of stock, it does not appear how they have lost the value of such shares.

But we are confronted with a more serious question and that is whether under the facts alleged any conversion is chargeable to the selling banks, liability for which would be assumed by this respondent. The alleged conversion took place when the original banks transferred the shares on their books upon presentation by the administrators of the original certificates—some standing in the name of the deceased, others in the name of the estate. The complaint alleges the due appointment and qualification of the two Hellmans as administrators, and that they were acting as such at the time of these transfers. The gravamen of this phase of the case is that the transfers were procured without an order of confirmation of the probate court and that those banks accordingly committed an act of conversion by effecting the transfers without such order. Section 324 of the Civil Code, as it read at the time these transfers were made, provided: "such shares of stock . . . may be transferred by indorsement by signature of the proprietor, his agent, attorney, *or legal representative, and the delivery of the certificate*". It

should be noted that the section does not require proof of the authority of the legal representative. It is at this point that the parties separate—the appellants arguing that, in the absence of such proof, a conversion results, the respondent arguing upon the strict terms of the statute which do not require it. The appellants rely upon *Quay* v. *Presidio & F. R. R. Co.*, 82 Cal. 1 [22 Pac. 925], and *Taft* v. *Presidio & F. R. R. Co.*, 84 Cal. 131 [24 Pac. 436, 18 Am. St. Rep. 166, 11 L. R. A. 125]. Both involved similar transactions. Stock was transferred on the books of the corporation following delivery of the original certificates by one holding the power of attorney of the owner. In both cases it was held that the power of attorney did not authorize the indorsement, and that the corporation had actual notice of that fact at the time of the indorsement. Here the complaint alleges that the issuing banks had full notice and knowledge that the Hellmans did not have authority to "transfer or dispose of said stock", but it does not allege that they had notice or knowledge that the Hellmans did not have authority as administrators to indorse the certificates and thus pave the way for a confirmation by the probate court. It seems to be their contention that such confirmation must be had before the transfer is made on the books of the corporation. But section 1523 of the Code of Civil Procedure, which controlled at the time of these transactions, authorized the executor or administrator to sell from time to time all or so much of the personal property as may be necessary, such sale "to take effect only upon confirmation by the court". In 11 California Jurisprudence, page 890, it is said: "All sales must be under oath reported to and confirmed by the court before title to the property passes, and it is specifically provided that sales of personal property take effect only upon confirmation by the court. If, therefore, the sale is not sanctioned by the court, the title remains in the estate." We find nothing in the statutes existing at the time which required proof of confirmation of the sale before a transfer could be made on the books of the corporation. Fletcher's Cyclopedia of Corporations, volume 12, page 443, states the rule as follows: "Since a corporation is not bound to inquire as to the authority of an executor or administrator to transfer stock standing in the name of his decedent, except in so far as such authority is limited by restrictions in the will or the general law, it cannot require proof of such authority

before making a transfer on its books on his indorsement. Nor will the mere fact that an executor is acting at his own risk in transferring stock to a legatee justify such a refusal, in the absence of a showing of other facts making the transfer improper." 26 Ruling Case Law, page 1115, states that a corporation is liable in conversion when it "wrongfully" transfers or refuses to transfer stock on its books. The authorities there cited are in accord with the Quay and Taft cases where the corporation has actual knowledge of the "want of authority" of the agent demanding the transfer. These authorities are not out of harmony with anything said herein. They are in accord with the general principle that a conversion is "some act of ownership or exercise of dominion over the property of another in defiance of his rights". It is this essential element which is lacking here. The administrators were entitled to the possession and "dominion" of the property of the heirs. No act charged to the selling banks interfered with this possession or dominion. The cases cited would be analogous to this if the powers of attorney therein had expressly authorized the agent to procure the transfers, and he had thereafter converted the stock in defiance of the rights of his principal. Here the statutes in probate above noted confer that authority.

The question presented here is controlled by the statute. Section 324, Civil Code, authorizes a corporation to make the transfer upon presentation of the certificates by the "legal representative" of the owner. It is conceded that the Hellmans were the legal representatives of the owners of the stock and that the transfers were made upon their demand. ▮ It is a rule which requires no citation of cases that when a statute measures the power or prescribes the mode of conduct, the individual cannot be charged with wrong if he does nothing more than follow the terms of the statute. This is all that the complaint alleges that the selling banks did in this transaction. There was, therefore, no conversion on the part of the selling banks under the facts here pleaded, and hence there was no liability cast upon the purchasing bank—the respondent herein.

The judgment is affirmed.

Curtis, J., Waste, C. J., Shenk, J., Edmonds, J., and Seawell, J., concurred.

Rehearing denied.