[Civ. No. 12250.   Second  Appellate  District,  Division  One.— January 31, 1941.]

HERBERT HELLMAN ARONSON et al., Appellants, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association), Respondent.

712

Mitchell, Silberberg, Roth & Knupp and Livingston & Livingston for Appellants.

Edmund Nelson, G. L. Berrey, Freston & Files, James A. McLaughlin and Louis Ferrari for Respondent.

DORAN, J.—Appellants as plaintiffs instituted this action to recover damages for an alleged conversion of certain shares

of bank stock and now appeal from a judgment dismissing the said action as to the respondent bank after a demurrer interposed by the bank to the first amended complaint herein was sustained without leave to amend further. The appeal is prosecuted from the judgment of dismissal upon a bill of exceptions, in which appellants assign as error the order sustaining the demurrer without leave to amend, the denial of appellants' motion to amend the said order so as to permit further amendment of the complaint and the denial of a motion for an order granting leave to amend the complaint by filing certain proposed amendments. The respondent bank demurred both generally and specially.

The instant action is the second such between the same parties and for the same cause. A general demurrer to plaintiff's complaint in the first action was sustained without leave to amend, the cause was dismissed and the judgment of dismissal was affirmed by the Supreme Court of this state on October 4, 1937, the opinion being reported in *Aronson* v. *Bank of America etc. Assn.*, 9 Cal. (2d) 640 [72 Pac. (2d) 548]. The facts which form the basis of appellants' complaint are briefly summarized in that opinion.

The court there held that the complaint failed to state a cause of action because it failed to show that the administrators had exercised dominion over the shares and converted them to their own use and benefit, that in the absence of allegations to the contrary it must be presumed that they were acting in their capacity as administrators of the estate, that there were no allegations showing that the plaintiffs suffered any injury in the transaction, and that as to the predecessor bank, it was not shown that it did anything more than obey the provisions of section 324 of the Civil Code, as it then read, which section then provided that "such shares of stock . . . may be transferred by indorsement by signature of the proprietor, his agent, attorney, or legal representative, and the delivery of the certificate". The court held that the said section did not require proof of the authority of the legal representative, and the bank could not be held guilty of a conversion in following the mode of conduct prescribed by the statute.

Before the affirmance of the judgment in the former action and on November 28, 1936, the present action was commenced by appellants and the complaint therein was thereafter

amended on June 18, 1937, and again on May 21, 1938, after which respondent bank put in an appearance and interposed its demurrer.

The complaint sets forth four separate counts, each count based upon a transaction whereby defendants Marco and Irving Hellman as administrators of the estate of appellants' mother, Amy Hellman Aronson, deceased, caused certain shares of stock, the property of the estate, to be transferred upon the books of a predecessor of respondent bank, whose assets and business respondent bank later purchased and whose liabilities the said respondent thereby assumed. The complaint alleges that distribution of the estate was decreed in October, 1925. The first and second counts of the complaint are concerned with transfers of stock made before the decree of distribution, the third and fourth counts have to do with transfers after such decree was made and entered. The transfers are alleged to have been made either to third parties or to one of the administrators and it is alleged that the said administrators never applied to the court for approval and confirmation of the transfer and never accounted to the plaintiffs for said stock, but converted the same to their own use and benefit.

Appellants in their brief confine their argument to the fourth count of the complaint on the ground that if any one of the counts states a cause of action, then the general demurrer to such count was not well taken. It should be pointed out, however, that the first two counts of the complaint differ from the third and fourth in a vital respect, namely, that they involve transfers made before the decree of distribution of the estate. As will hereinafter appear, upon the facts alleged, and under the ruling of the Supreme Court in the first action hereinabove cited, the only basis for the liability of respondent bank's predecessor for conversion of the stock would be knowledge of lack of authority of the administrators at the time of the transfer of the stock in question. Without such knowledge, under the law as it then existed, no liability could attach to the predecessor bank for a transfer of stock made under the circumstances alleged in the complaint. At any time before the decree of distribution the administrators were clothed with authority to effect a sale of the personal property and, short of knowledge or notice of a wrongful purpose, the bank was not in a position to question a request for transfer of stock made on presentation of a prop-

erly endorsed certificate. (Sec. 1523, Code Civ. Proc.; sec. 324, Civ. Code; *Aronson* v. *Bank of America, supra.*)

■ Appellants have failed in any attempt to charge the predecessor bank in any one of the counts of the complaint with knowledge of a wrongful purpose of the administrators in procuring the transfer of the stock. The facts of which the said bank is alleged to have knowledge are not such as would even put the bank on notice that the transaction was wrongful. The allegations of all four counts are similar in this respect. The bank is in effect charged with knowledge that the transfer of the stock was not made for the purpose of enabling the administrators to continue to hold said stock in the said estate, nor for the purpose of effecting a subsequent sale for the benefit of the estate, but was, on the contrary, made so as to permit a third party to deal with the stock as his own and for his own account and for the account of the administrators individually and personally, and to permit the third party and the administrators to use the stock in their own personal speculations. All of which is no more than to charge the bank with knowledge that the stock was transferred to a third party so that he could use it as his own; which is the principal purpose of any transfer of stock.

■ The term "subsequent sale" as used in the complaint can only be taken to mean a resale of the stock by the transferee. What the transferee did with the stock after it became his could have no bearing upon the nature of the transfer here complained of and whether the bank knew or did not know that the transferee would hold or sell the stock is of no consequence. Nor does the fact alone that the bank knew that the stock was later to be used for the account of the administrators individually charge the bank with knowledge of a wrongful purpose. The Supreme Court in its decision in the first action above referred to had before it the fact that one of the transactions complained of involved a direct transfer of stock to one of the administrators individually, yet the court there held that the complaint did not state a cause of action against the bank for a wrongful conversion. If a direct transfer of stock to one of the administrators as an individual does not put the transferring bank on notice as to a wrongful purpose it cannot be said that knowledge that the administrator would later use the stock for his own account could be of any greater effect. It should be

obvious that if the stock is transferred to any person as an individual, an administrator included, it is that person's intention to use the stock for his own account. The decision of the Supreme Court in the first action is controlling upon the question of the effect of any such knowledge upon the part of the predecessor bank.

The important factor is knowledge on the part of the bank as to what disposition was to be made of the proceeds received on the transfer and whether any proceeds were to be forthcoming. As to this the complaint is silent and fails to show that the bank in question had any knowledge at the time of the transfers that the administrators intended to apply the stock or the proceeds of the transfer to their own use and benefit or to the benefit of any third party, or that, at the time, the bank was in possession of such facts as to amount to notice of any such plan or purpose.

■ Since the transfers complained of in the first and second counts of appellants' complaint occurred before distribution of the estate was decreed and since appellants have failed to charge the predecessor bank with the requisite knowledge of a wrongful purpose on the part of the administrators, those two counts still fall within the rule laid down in *Aronson* v. *Bank of America, supra,* and for the reasons there given the said counts fail to state a cause of action against respondent bank. The allegations of fraud and conspiracy are unsupported by any facts stated in the first and second counts and, standing alone as they do, constitute pure conclusions on the part of the pleaders, insufficient to charge the defendants with any wrong. See: *Kavanagh* v. *Wade, ante,* p. 92 [108 Pac. (2d) 475]; *Moropoulos* v. *C. H. & O. B. Fuller Co.,* 186 Cal. 679, 683 [200 Pac. 601].

■ As to the remaining counts, however, the transfers of stock are alleged to have occurred at a time after the date when the decree of distribution was made and entered, and it is further alleged that: "At all said times from the date of its incorporation up to and including December 8, 1928, Merchants National Trust and Savings Bank of Los Angeles, and its executive officers, managers, and directors, had actual knowledge of all the facts and matters hereinabove alleged which occurred or existed prior to December 8, 1928." The bank named in the allegation is the predecessor of respondent bank.

Respondent attacks the above quoted allegation as insufficient to charge the bank with knowledge in that it amounts to a mere conclusion of law. The point was raised by respondent's special demurrer. As to the existence of the decree of distribution, which according to the complaint is a "fact" and "matter" existing prior to December 8, 1928, the above allegation, though very general and perhaps not in the best form, is in effect an allegation that the bank knew of the existence of the decree of distribution at all such times, and constitutes an allegation of an ultimate fact and not a conclusion of law. (*Farmers' Life Ins. Co. v. Ignacio State Bank*, 85 Colo. 46 [272 Pac. 1116]; 49 C. J. 69, and cases cited in note 85 thereof.)

A wrongful transfer of stock upon the books of a corporation renders the corporation liable for a conversion of the stock, *Aronson v. Bank of America, supra,* at page 646, citing 26 Ruling Case Law, 1115; and where the corporation has knowledge of the lack of authority of the agent demanding the transfer the corporation is so liable if it transfers the stock upon such a demand. (*Quay v. Presidio & Ferries R. R. Co.,* 82 Cal. 1 [22 Pac. 925]; *Tafft v. Presidio & Ferries R. R. Co.,* 84 Cal. 131, 132 [24 Pac. 436, 18 Am. St. Rep. 166, 11 L. R. A. 125].) Therefore, to decide whether the third and fourth counts of the complaint state a cause of action against respondent bank it first becomes necessary to determine what authority, if any, was possessed by the administrators to procure the transfer of the stock in question to themselves or a third party after the entry of the decree of distribution. If the decree terminated any authority of the administrators to procure such a transfer then knowledge on the part of respondent bank's predecessor of the existence of the decree must be held to be knowledge of the lack of authority in the administrators, at the time of the transfers complained of. (*Quay v. Presidio & Ferries R. R. Co., supra.*)

Section 1666 of the Code of Civil Procedure, then in effect, provided as to such a decree that it was "conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal". Provisions to the same effect are now embodied in section 1021 of the Probate Code. Accordingly, it has been held that the decree of distribution confirms the title which has accrued under the law of descent, and is intended to be a final disposition of the

entire estate, so that nothing remains for the court to act upon; and there is nothing left for the legal representative to do but to obey the decree and deliver the property. (See the article on Executors and Administrators in 11B California Jurisprudence, section 1289, pages 785, 786, and cases there cited; *St. Mary's Hospital* v. *Perry*, 152 Cal. 338, 342 [92 Pac. 864]; *Rafferty* v. *Mitchell*, 4 Cal. App. (2d) 491 [41 Pac. (2d) 563].) The representative of the estate becomes personally liable for refusing to comply with the decree and the court may compel performance on his part. (*Estate of Kennedy*, 129 Cal. 384, 388 [62 Pac. 64]; 11B Cal. Jur., sec. 1311, p. 820.) From the foregoing, it is clear that after distribution of an estate is decreed the executor or administrator has no further authority but to deliver the property of the estate into the hands of the heirs or legatees; and, specifically, in the instant case the administrators were without authority to demand the transfers of stock complained of in the third and fourth counts of the complaint herein. ▪ Furthermore, since it is alleged that the predecessor bank had knowledge of the decree of distribution at the time the said transfers were demanded, it follows that the complaint herein contains a sufficient charge that the transfers in question were made by the said bank with knowledge of the lack of authority in the agent demanding the same; and hence, if true, such transfers constituted an unlawful exercise of dominion over the property of the plaintiffs (appellants), who are shown by the complaint to be the heirs at law entitled to inherit their mother's estate. On the facts as alleged in said counts, it must be held that a cause of action for conversion is therein stated.

▪ Respondent contends that appellants' statement of the cause of action is fatally defective because of failure to allege a demand for the stock certificates. But the facts alleged show that respondent's predecessor committed an actual conversion in effecting an unauthorized transfer of the stock and under such circumstances no demand is necessary before the commencement of an action for conversion. (*Mier* v. *Southern California Ice Co.*, 56 Cal. App. 512, 518 [206 Pac. 83].) Even if demand were necessary the complaint reveals circumstances which would render such a demand futile; moreover, it is alleged that a demand was made for the value of the

stock converted and that the defendants refused to pay the same or any part thereof.

Respondent also contends that through its purchase of the banking business and assets of its predecessor under section 31 of the Bank Act, it did not succeed to or assume any liabilities arising out of the relationship of its predecessor with the shareholders thereof, but only assumed the liabilities incurred by its predecessor in the course of its banking business. The complaint herein sets forth that respondent took over all the assets of its predecessor and paid its predecessor no consideration therefor, and reveals a situation wherein the predecessor was left with nothing with which to respond in damages. The purchase of the business is alleged to have been effected through an exchange of shares directly with the shareholders of the predecessor bank. It is also alleged that the predecessor was dissolved prior to the commencement of the instant action. It appears therefor that respondent bank is the only party now able to respond in damages for the conversion of the stock by its predecessor. In view of the broad language employed in section 31 of the Bank Act, as amended by Stats. 1913, p. 151; Stats. 1921, p. 1373; Stats. 1927, p. 1792 (vol. 1, Deering's General Laws, 1937, p. 234), it cannot reasonably be said that a purchase of assets such as the one here alleged was not intended to carry with it responsibility for all liabilities of whatever kind or nature. In fact, the act expressly so provides, where in section 31 it is said: ''The rights of creditors of the selling bank shall not in any manner be impaired by any such sale, nor shall *any* liability or obligation for the payment of *any* money due *or to become due, or any claim or demand,* in any manner, *or for any cause existing against such selling bank* or against any stockholder thereof, be in any manner released or impaired . . . , but such bank to which the other shall sell all its business or all the business of any of its departments, shall succeed to all such relations, obligations, trusts and liabilities and be held liable to pay and discharge all such debts and liabilities and to perform all such trusts of the selling bank in the same manner as if such bank to which the other had sold had itself incurred the obligation or liability . . . ''. (Italics added.) The language of the section above quoted is broad enough to include contingent liabilities for tortious acts of the selling bank, particularly when, as it appears here, the

sale leaves the selling bank without ability to respond in damages.

Respondent contends that there is a distinction to be drawn between the "internal" and "external" affairs of a corporation. While that may be conceded, it is not the point here involved. The question here to be determined is whether the language of section 31 of the Bank Act is broad enough to cover all liabilities of a selling bank regardless of distinction or classification, and, as seen above, the answer in the instant case is in the affirmative.

Respondent by its demurrer attempted to raise the bar of the statute of limitations. The complaint affirmatively shows that at the time of the transfers complained of the plaintiffs were minors under the protection of a general guardian and continued under such custody until arriving at their majority. Appellants contend the statute of limitations was tolled during their minority and rely upon the provisions of section 352 of the Code of Civil Procedure. Respondent argues that the cause of action vested in the general guardian and that the period of limitation commenced to run from the time the cause of action accrued. In the previous action hereinabove referred to this question was considered by Division Two of this court (see *Aronson* v. *Bank of America*, (Cal. App.) [65 Pac. (2d) 823]) when the case was before it prior to the hearing in the Supreme Court, and the question was not passed upon by the Supreme Court in its decision (*Aronson* v. *Bank of America, supra*). This court held that the existence of a general guardian had no effect upon the tolling of the statute during minority under section 352, Code of Civil Procedure, and the reasons there given and the authorities there cited are sound. It is clear that the cause of action herein accrued to appellants themselves and that it is generally held that the appointment of a general guardian has no effect upon the tolling of the statute of limitations as to a cause of action accruing to or "vesting" in a minor. (See *Funk* v. *Wingert*, 134 Md. 523 [107 Atl. 345, 6 A. L. R. 1686, and annotation, 6 A. L. R. 1689].)

Although not discussed to any extent in the briefs, it appears that respondent's special demurrer to the third and fourth counts of the complaint on the grounds of uncertainty is not well taken, either because uncertainties specified do not exist or because the matter objected to is immaterial or sur-

plus matter which may be left out of the pleading without impairing its sufficiency (21 Cal. Jur. 105, 106). It should be mentioned in passing that the complaint is far from a model of pleading and is in no sense concise. It is clear, however, that no attempt has been made to set out more than one cause of action in each count.

In view of the fact that the allegations of the first and second counts of the complaint reveal a situation wherein no cause of action would lie against respondent bank or its predecessor the trial court did not err in refusing to grant leave to plaintiffs to amend those counts, but for the reasons above given the court erred in sustaining the demurrer to the third and fourth counts and in dismissing the action.

The judgment of dismissal is therefore reversed with directions to the trial court to grant appellants leave to file an amended complaint if they are so advised.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied February 17, 1941, and respondents' petition for a hearing by the Supreme Court was denied March 31, 1941.