[Civ. No. 17808. Third Dist. Nov. 17, 1978.]

THE STATE OF CALIFORNIA, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
LELAND EARL WARING, a Minor, etc., Real Party in Interest.

476

## COUNSEL

Evelle J. Younger, Attorney General, John M. Morrison, Craig Modlin and Daniel Doke, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Wilke, Fleury, Hoffelt & Gray, Steven Kroff, James V. Quillinan and Alan G. Perkins for Real Party in Interest.

## OPINION

**CARR, J.\***—Petitioner State of California seeks a writ of mandate to compel respondent Superior Court of Sacramento County to vacate its

---

\*Assigned by the Chairperson of the Judicial Council.

order relieving real party in interest from the provisions of Government Code section 945.4, requiring filing of a written claim as a prerequisite to a lawsuit against a public entity.[1] The trial court concluded the requirements of section 911.4, subdivision (b), which tolls the one-year period within which to obtain leave to file a late claim on the ground of a minor's incapacity and nonrepresentation by a guardian, were met. The order was made in proceedings, pursuant to section 946.6, initiated by a petition supported by affidavits from the parents of the minor real party in interest, his doctor and his attorneys. Petitioner filed no contravening affidavits. These affidavits by real party in interest constitute the only evidentiary matter before the trial court and this court.

The minor, Leland Earl Waring (Waring), sustained substantial personal injuries, diagnosed as severe quadriplegia, incomplete below C-4, when he dived into the Sacramento River and broke his neck on July 25, 1976. At this time he was 16 years of age, his date of birth being September 22, 1959. Subsequent to the injury, he was taken by helicopter to the regional spinal injury unit of the Santa Clara Valley Medical Center, where he remained until December 23, 1976. During the first six weeks in the hospital, his treatment consisted of skull traction followed by a halo body jacket fixation. Access to him during his hospital stay by outsiders was extremely limited. Dr. Conal B. Wilmot, the treating physician, stated Waring was "very introspective, quiet and showed a failure of realization of the nature and extent and seriousness of his injuries and the degree of his paralysis. He showed a refusal to plan his future due to apprehension and fear that his paralysis . . . might remain permanent." Earl Waring, the minor's father, was of the opinion that his son was mentally and physically incapacitated during his stay in the hospital, that he was unaware of what was going on, not thinking very much, unable to give any assistance as to the cause of his injuries and did not fully understand the nature and extent of his injuries. Delsie Waring, the minor's mother, related that during the hospitalization her son was very "down," cried, was unable to cope with the situation, and lacked the capacity to understand what was going on around him. His attorney declared under oath that he was unable to see Waring until September 1, 1976, because no visitors were allowed. At that time Waring had no memory of his accident or any causation; that because of pain and shock, he appeared mentally incapacitated and was unable to assist counsel in any manner. After Waring's discharge from the hospital, counsel requested a medical report in January 1977, which report was received in April

---

[1]All statutory references herein unless otherwise designated are to the Government Code.

1977. From this report, counsel first learned that Waring had broken his neck by diving into a shallow spot in the river. Knowledge that the state had any interest in the accident site was not acquired until August 1977.

An application to present a late claim pursuant to section 911.4, was filed with the State Board of Control on Waring's behalf on August 30, 1977. The board returned the claim as not timely filed because more than one year had elapsed from the date of the accident. This has apparently been construed as a denial of the claim by the board. We agree with this construction.

The trial court found that Waring was at all times from July 25, 1976, (date of injury) and still is a minor; that he was physically and mentally incapacitated from July 25, 1976, until December 23, 1976 (date of hospital discharge); that during such period he was without a guardian or conservator of his person within the meaning of sections 911.4 and 946.6 and therefore the one-year limitation period prescribed by section 911.4, subdivision (b) was tolled for the period of such incapacity. Waring was therefore relieved from the necessity of filing a claim and filed his complaint herein.

Petitioner now seeks a writ of mandate to compel the superior court to set aside its order. The documents before us consist only of the papers filed in the Superior Court of Sacramento County.

The following contentions are made in support of mandate:

(1) That Waring's parents were his guardians at law and their failure to file a claim on his behalf precludes leave for relief to file a late claim;

(2) The evidence is insufficient to show that Waring was incapacitated during the period from July 25, 1976, to December 23, 1976, so as to toll the claim filing period; and

(3) The claim was not filed within a reasonable time.

■ Petitioner's basic contention is that the Legislature in using the word "guardian" in section 911.4, subdivision (b) intended such word to include the natural parents of a minor without more. Thus, a failure by a parent to file a claim on behalf of a minor with a public agency within the statutory limitation period would bar the minor's right to file a late claim. This contention is neither consistent with judicial authority nor supported by considerations of public policy or principles of statutory construction.

Government Code section 911.4, subdivision (b) provides: "The application shall be presented to the public entity as provided in Article 2 (commencing with Section 915) of this chapter within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim. The proposed claim shall be attached to the application. *In computing the one-year period under this subdivision, time during which the person who sustained the alleged injury, damage or loss is a minor shall be counted, but the time during which he is mentally incapacitated and does not have a guardian or conservator of his person shall not be counted.*" (Italics added.)

Petitioner argues that Waring's parents, having custody of him, were the natural guardians of his person. Therefore the exemption provided in section 911.4 is inapplicable and the failure of the guardian to file a claim on his behalf precludes relief.

The issue before us has not heretofore been subject to judicial scrutiny. However, the right of parents as natural guardians to forfeit the rights of minors by inaction has been considered. In *Cross* v. *Pacific Gas & Elec. Co.* (1964) 60 Cal.2d 690 [36 Cal.Rptr. 321, 388 P.2d 353], our Supreme Court overruled earlier cases (e.g., *Haro* v. *Southern Pacific R.R. Co.* (1936) 17 Cal.App.2d 594, 596 [62 P.2d 441]; *Sears* v. *Majors* (1930) 104 Cal.App. 60, 62 [285 P. 321]) to the extent those decisions held a minor's wrongful death action barred by the parent's failure to file an action within the statutory limitations period. (60 Cal.2d at pp. 693-694.)

The court stated in *Cross*: "The running of the statute of limitations against adult heirs does not affect the rights of minor plaintiffs in a wrongful death action." (60 Cal.2d at p. 693; accord, *Arizmendi* v. *System Leasing Corp.* (1971) 15 Cal.App.3d 730, 736 [93 Cal.Rptr. 411].) Clearly, the parent does not succeed to the minor's action through possession of a proprietary right in that action, and the parent's failure timely to file a claim on behalf of the minor does not preclude the minor's maintenance of the action if otherwise permitted.

The rationale of *Cross* has not been limited to wrongful death actions. (See, e.g., *Glavich* v. *Industrial Acc. Com.* (1941) 44 Cal.App.2d 517, 522 [112 P.2d 774] (overruled to the extent inconsistent on other grounds in *Cross*); accord, *Fisher* v. *Workers' Comp. Appeals Bd.* (1976) 62 Cal.App.3d 924, 928-929 [133 Cal.Rptr. 471]; *Aronson* v. *Bank of America* (1941) 42 Cal.App.2d 710, 720 [109 P.2d 1001] (opn. incorporates by reference prior decision of court (Cal.App.) [65 P.2d 823, 825-826]

reversed on other grounds (9 Cal.2d 640 [72 P.2d 548])); *Gottesman v. Simon* (1959) 169 Cal.App.2d 494, 509 [337 P.2d 906, 77 A.L.R.2d 620]; *Van Buskirk v. Todd* (1969) 269 Cal.App.2d 680, 689 [75 Cal.Rptr. 280].)[2] Nor is petitioner's contention supported by public policy considerations concerning sovereign immunity and the purposes of the claim filing statutes. The California Supreme Court, in abrogating the common law rule of governmental immunity, observed that " 'when there is negligence, the rule is liability, immunity is the exception.' " (*Baldwin v. State of California* (1972) 6 Cal.3d 424, 435 [99 Cal.Rptr. 145, 491 P.2d 1121]; *Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211, 219 [11 Cal.Rptr. 89, 359 P.2d 457].) The import is that tort liability should be extended rather than limited unless there is legislative intent to the contrary.

■ The purpose of the claim filing statute is to give the public agency notice of the claim so that it may make an adequate investigation to determine whether to settle the claim without the expense of litigation. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) Moreover, the claim filing requirement was "not enacted to penalize minors or to deprive them of their rights where adults may have slept on their rights—quite to the contrary the statutes are to protect minors." (*Morrill v. City of Santa Monica* (1963) 223 Cal.App.2d 703, 708 [35 Cal.Rptr. 924].) "[P]reservation of the rights of minors is the particular care of all courts and all tribunals." (*Royal Indem. Co. v. Industrial Acc. Com.* (1948) 85 Cal.App.2d 373, 380 [192 P.2d 811].) Statutes providing an exception to the claim filing statutes "are designed to prevent the claim filing statutes from serving as a trap for laymen, unlearned in the law, ignorant of the claim requirement . . . ." (*Syzemore v. County of Sacramento* (1976) 55 Cal.App.3d 517, 524 [127 Cal.Rptr. 741].)

Finally, we consider whether the Legislature intended that a minor's claim be barred by parental failure to file a timely claim. We conclude that the Legislature did not intend a minor's claim to be barred in this manner. If petitioner's contention were carried to its logical conclusion, the claim filing period would run from the date of a minor's injury,

[2] Both *Glavich* and *Fisher* involved claims for workers' compensation death benefits and held that a minor who had not complied with the statutory limitation in Labor Code section 5407 for filing a claim, could still assert the claim on the ground the statute had been tolled pursuant to section 5408 providing, inter alia, that "no limitation of time provided by this division shall run against any person under 18 years of age or any incompetent unless and until a guardian or trustee is appointed." *Aronson* was an action brought by a minor to recover for conversion of stock shares (applicable tolling statute was Code Civ. Proc., § 352); *Gottesman* involved an action to recover personal injuries sustained in an automobile collision; *Van Buskirk* was an action seeking to establish paternity.

notwithstanding the custodial parents' ignorance of the time limitation or the inability of the parents to obtain facts concerning the injury necessary to file a claim because of the comatose state of the child. A premium would be placed on being an orphan.

■ The word "guardian" used alone without qualification, by statute contemplates a person other than a parent. "A guardian is a person *appointed* to take care of the person or property of another." (Italics added; Prob. Code, § 1400.) In terms of the rights exercised by the guardian, as relevant herein, a guardian can be classified as a "natural guardian," "a guardian of the person," and/or "a guardian of property."

■ A natural guardian describes the legally recognized duties and responsibilities of a parent for a child. "[T]he legal obligations of parenthood include the duties of support, of care and protection, and of education. As compensation therefor, the law recognizes certain rights in the parent . . . ." (*Odell* v. *Lutz* (1947) 78 Cal.App.2d 104, 106 [177 P.2d 628].) A parent is by law the natural guardian and entitled to the custody of the person of a minor. (*Estate of Yano* (1922) 188 Cal. 645, 648 [206 P. 995]; *In re Hunt* (1894) 103 Cal. 355, 356 [37 P. 206]; Civ. Code, § 197.)

"The guardianship by nature extends only to the custody of the person of the ward, and not to his property. But to entitle the guardian to manage the property of his ward, he must be duly appointed by some competent public authority. [Citation.] So, guardianship by nature extends only to the person . . . ." (*Kendall* v. *Miller* (1858) 9 Cal. 591, 592.) "The authority of the parent ceases . . . [u]pon the appointment, by a Court, of a guardian of the person of a child . . . ." (Civ. Code, § 204.)

A minor may not prosecute a claim through the courts without the appointment of a guardian ad litem, the parents having preferential status in applying for such appointment. A parent cannot compromise or settle the claim of a minor without court approval. (Code Civ. Proc., § 372.)

■ We conclude that had the Legislature intended that a custodial parents' failure to file a timely claim would bar the minor's assertion of such claim, it would have used the word "natural" to qualify the word "guardian."

Petitioner's contention that the evidence cannot support the trial court's finding that Waring was incapacitated during the period from July 25, 1976, to December 23, 1976, merits scant attention. It is sufficient to

note that the affidavits of the parents, the attorney and the doctor are uncontradicted and offer substantial support for Waring's allegation that he was mentally incapacitated during his hospital stay.

■ Nor is petitioner's contention that there was an unreasonable delay in presenting the claim sustainable. The five months of hospitalization, during which time Waring was mentally incapacitated and without a conservator or guardian of his person, must be deducted in computing the one-year period. Moreover, the claim was filed within a reasonable time after the nature of the injury and the interest of the public entity was discovered. Prejudice by delay has not been claimed by petitioner.

The petition for writ of mandate is denied.

Puglia, P. J. and Regan, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied January 17, 1979.