Filed 6/3/25; on rehearing

OPINION ON REHEARING

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TAMARA AMUNDSON et al.,<br><br>    Cross-complainants and<br>Respondents.<br><br>    v.<br><br>RUTH CATELLO,<br><br>    Cross-defendant and Appellant. | D082158<br><br><br><br>(Super. Ct. No. 37-2022-00004784-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Kevin A. Enright, Judge. Appellant's request for judicial notice denied. Respondents' motion to augment granted. Reversed.

Higgs Fletcher & Mack, John Morris and Steven M. Brunolli, for Cross-defendant and Appellant.

Leo Law Office, Shawn Leo; Williams Iagmin and Jon R. Williams, for Cross-complainants and Respondents.

At the time of her death in 2020, Leslie J. Knoles (Decedent) and Ruth Catello co-owned certain real estate (the property).  After Decedent passed away, the property's title became the subject of parallel legal proceedings.  Since 2021, Catello and Decedent's four surviving siblings (the siblings) have been involved in probate proceedings concerning the property and other assets of Decedent's estate.  At the same time, Catello and the siblings litigated to completion a civil action brought by the siblings to partition the property, which was filed in 2022 and is the claim at issue in this appeal.  The trial court entered an interlocutory judgment identifying the property's owners as Catello and Decedent's estate and ordering a partition by sale.

Catello now claims that the siblings lacked the necessary standing to sue for partition.  She contends that she owns part of the property independent of the outcome of the probate proceedings and that the probate court has yet to determine whether she or the siblings own the other part.  Thus, in her view, the siblings could not have been "owner[s] of an estate of inheritance" in the property as required by Code of Civil Procedure section 872.210 to bring a partition claim.[1]  We agree that the uncertainty concerning ownership of the property means the siblings lacked standing to bring their partition claim.  Accordingly, we reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

According to a deed recorded in 2005 (the 2005 deed), Catello and Decedent co-owned the property—which consisted of a parcel of land, a house, and an accessory dwelling unit—in fee simple as joint tenants with a right of survivorship.  This form of ownership entitled Catello and Decedent each to

---

[1]    Subsequent undesignated statutory references are to the Code of Civil Procedure.

2

an equal, undivided share in the entire property that would automatically pass to the survivor if one joint tenant were to die before the other. (4 Miller & Starr, Cal. Real Est. (4th ed. 2024) § 11:23 (hereafter Miller & Starr).) In other words, the deceased joint tenant's interest passes to the other joint tenant instead of becoming part of his or her estate. (*Ibid.*)

In September 2020, Decedent recorded a quitclaim deed she had granted to herself (the 2020 quitclaim deed) that, if valid, severed the joint tenancy and created a tenancy in common with no right of survivorship. (Miller & Starr, *supra*, § 11.28; Civil Code, § 683.2, subds. (a)(2) & (c)(1).) The result of a severance of a joint tenancy consisting of two parties is that "[e]ach party continues to hold his or her respective property interests constituting a one-half fee title in the property, but the parties hold it as tenants in common without the expectancy of receiving the other one-half interest on the death of the other joint tenant." (Miller & Starr, *supra*, § 11.28.) Accordingly, the cotenants' respective interests in a property may be devised by will or passed onto their heirs through the laws of intestacy. (*Ibid.*)

Decedent, who allegedly was unmarried and without children, died a few weeks after the 2020 quitclaim deed was recorded. In November 2020, the siblings initiated probate proceedings to distribute the assets of Decedent's estate, including the property.[2] In February 2021, Catello filed

---

[2]    Catello requests that we take judicial notice of three documents purportedly from the probate action and a copy of the register of actions from February 2024. We deny her request because that copy of the register of actions is outdated and, as explained below, the mere fact that the probate proceedings have not been completed is dispositive as to our standing analysis. For the purposes of providing background, on our own motion, we take judicial notice of the current register of actions of the probate

a competing petition for letters of administration, and a year later the probate court appointed an estate administrator, sometimes referred to as a personal representative. (Prob. Code, § 58 [" 'Personal representative' means . . . administrator"].) In March 2023, Catello filed a petition to administer a will. A trial on the parties' competing petitions is currently scheduled for August 2025.

In February 2022—about two weeks before the estate administrator was appointed—Catello sued two of the siblings in the superior court seeking, among other things, to cancel the 2020 quitclaim deed and quiet title to the property (the quiet title action). According to Catello, she owned the entire property because the 2020 quitclaim deed that extinguished the right to survivorship was invalid. Catello did not name the estate as a defendant, nor did she seek leave to amend her complaint to add the estate administrator after one was appointed.

All four siblings responded to the quiet title action in part by filing, in May 2022, a cross claim to partition the property by sale (the partition claim).[3] "Partition is the procedure for segregating and terminating common interests in the same parcel of property." (Miller & Starr, *supra*, § 11:14.) "The partition changes the rights of the cotenants from common possession of the entire property into individual rights of exclusive possession of some portion of the property for each cotenant." (*Ibid.*) But "[t]he process does not involve a transfer of title; the parties already have the title, and their common title is merely being divided." (*Ibid.*, fns. omitted.)

---

proceedings (*Estate of Knoles*, Super. Ct. San Diego County, No. 37-2020-00040222-PR-LA-CTL). (Evid. Code, § 452, subd. (d).)

[3] The siblings also successfully moved for judgment on the pleadings as to the claims asserted in Catello's quiet title action. The disposition of those claims is not pertinent to this appeal.

4

In support of their partition claim, the siblings alleged that the 2020 quitclaim deed was valid and, as a result, Decedent had an interest in the property that would eventually belong to them as her only heirs (because the right of survivorship was extinguished by this deed). The siblings noted, however, that probate proceedings concerning Decedent's estate were ongoing. Although an estate administrator had already been appointed, the siblings did not include her or the estate as a party, instead suing in their individual capacities. During the course of the superior court proceedings, Catello never questioned whether the siblings possessed standing to bring their claim.

In January 2023, the court entered an interlocutory judgment for partition by sale, which required it to "determine[] the interests of the parties in the property and order[] [its] partition."[4] (§ 872.720, subd. (a).) The judgment identified the "record owners of the fee simple undivided interests in the [p]roperty" as (1) Catello and (2) Decedent. It also recognized that Decedent had passed away and that an estate administrator had been appointed. The siblings were identified in the order as the "estate successors in interest/beneficiaries." The judgment ordered the proceeds of the sale to go toward expenses and costs associated with the sale, the satisfaction of any liens, and payment of the siblings' attorney's fees, with any residue to be distributed equally to Catello and Decedent's estate.

---

[4]    "There are three methods of partition: (1) physical division of the property; (2) a sale of the property and a division of the proceeds; and (3) a partition by appraisal whereby one cotenant acquires the interests of the other cotenants based on a court ordered and supervised appraisal." (Miller & Starr, *supra*, § 11.15, fns. omitted.)

Catello timely appealed.[5]  Her only substantive argument is that the siblings lack standing to prosecute their partition claim.  She asserts that they "have *no* ownership interest in the Property at this time" and "will only take an ownership interest in the Property if their petition prevails in the probate court."

In response, the siblings maintain they had standing based on the fact that at the time the partition action was filed, the probate court was administering an intestate estate and they were Decedent's only intestate heirs.  They also suggest that Catello should not prevail even if her standing contention is legally sound.  In this regard, the siblings argue that Catello should be judicially estopped from contesting their standing because she named two of them as parties in her lawsuit to quiet title and cancel the 2020 quitclaim deed.  They also claim that Catello should be deemed to have conclusively conceded their allegations of their status as Decedent's legal heirs.

### DISCUSSION

The parties agree there is a *possibility* that at the conclusion of the proceedings to probate Decedent's estate, the siblings will collectively own part of the property.  The primary question for us is whether they jumped the gun by bringing their partition claim before that possibility was confirmed.  Catello asserts they did because the probate court has not yet decided who owns the property, which means that the siblings could not have been "*owner[s]* of an estate of inheritance" as required to bring their partition claim.  (§ 872.210, subd. (a)(2), italics added.)  Although the siblings recognize that their ownership interest in the property has not yet been confirmed,

---

5    An interlocutory judgment for partition is an appealable order. (§ 904.1, subd. (a)(9).)

they contend that the judgment should be affirmed because Catello's quiet title action was premised on her belief that they owned an interest in the property and because they were authorized to litigate their partition claim on the estate's behalf.

"Standing is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the [siblings]." (*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 810 (*Mendoza*).) "To demonstrate the requisite standing, [the siblings were] required to allege facts showing [they] had a ' "beneficial interest . . . that is concrete and actual, and not conjectural or hypothetical." ' " (*Ibid.*) "When, as here, the facts relevant to standing are undisputed, '[s]tanding is a question of law we review de novo.' " (*Scott v. Thompson* (2010) 184 Cal.App.4th 1506, 1510.)

Section 872.210, subdivision (a)(2) provides the standing requirements to bring a claim to partition real property. Consistent with these general standing principles and with partition's purpose of splitting title amongst *current* owners (see *ante*, at p. 4), the statute provides that a partition action "may be commenced and maintained by" "[a]n owner of an estate of inheritance . . . in real property where such property or estate therein is owned by several persons concurrently or in successive estates."[6] (§ 872.210, subd. (a)(2); see also *American Medical International, Inc.* v. *Feller* (1976) 59 Cal.App.3d 1008, 1013 [" 'The only indispensable requirement to [a partition] award is that a clear title be shown' "].)

---

6    An "estate of inheritance" is a "perpetual estate[]" (Civ. Code, § 761), such as a fee simple (*Alamo School Dist. v. Jones* (1960) 182 Cal.App.2d 180, 184) or a tenancy in common (*Gunn v. Gunn* (1929) 102 Cal.App. 606, 607).

This ownership requirement was met, the siblings claim, because Decedent's estate was an intestate estate when they filed their partition claim. In this regard they rely on Probate Code section 7000. It provides that "[s]ubject to section 7001," which concerns estate administration, "title to a decedent's property passes on the decedent's death to the person to whom it is devised in the decedent's last will or, in the absence of such a devise, to the decedent's heirs as prescribed in the laws governing intestate succession." The siblings relied on this section to argue that, as intestate heirs, they have possessed title to the property since Decedent passed away and will continue to possess it until and unless the probate court rules in Catello's favor.

The "basic purposes" of estate administration include "distribut[ing] the residue of the property . . . to those persons who are entitled to receive it." (*Estate of Bonanno* (2008) 165 Cal.App.4th 7, 17.) Accordingly, at the conclusion of the probate proceedings, the court will issue a final order of distribution that "confirms the title which has accrued under the law of descent." (*Aronson v. Bank of America Nat. Trust & Sav. Assn.* (1941) 42 Cal.App.2d 710, 717–718; accord Prob. Code, § 11605 [a final distribution "order binds and is conclusive as to the rights of all interested persons"].) This means that if the probate court were to rule in the siblings' favor by invalidating the proffered will—and the property was not sold or otherwise disposed of during estate administration (Prob. Code, § 7001)—their title in the property would be confirmed and the date of acquisition would relate back to the date of decedent's death. In this scenario, there would be an "absence of . . . a devise" of Decedent's interest in the property by will, and thus, title would pass to the siblings as Decedent's intestate heirs. (*Id.*, § 7000.)

8

But it also means that if the probate court were to rule in Catello's favor based on the proffered will—a possibility the siblings concede exists—she would acquire title to the half of the property Decedent left behind with an acquisition date that similarly relates back to the date of her death. (Prob. Code, § 7000; see *Bank of Ukiah v. Rice* (1904) 143 Cal. 265, 271 (*Bank of Ukiah*) ["While it may be conceded that upon the death of C. C. Rice his title to the land descended to his heirs at law, their right thereto was subject to the administration of his estate, and subordinate to his testamentary disposition thereof."].)  In the language of Probate Code section 7000, title to the property would "pass[] on the decedent's death to the person to whom it is devised in the decedent's last will . . . ."

The siblings claim that their contingent ownership of half of the property under their reading of Probate Code section 7000 is enough to establish standing for their partition claim, contending that the outcome of the probate proceedings is irrelevant to the standing issue presented here. But the party seeking partition must have *clear* title.  (See *ante*, at pp. 4, 7) And because it is presently uncertain who will succeed to Decedent's interest, that uncertainty in the ultimate outcome of the probate proceedings precluded the siblings from establishing the ownership interest required to bring a partition claim under section 872.210.  This principle has been explained as follows:  "[A]lthough real property of a decedent passes to the decedent's heirs at law, their right to it is subject to administration of the estate and to its distribution in accordance with the law or the will, and, until that distribution, they have no interest that will enable them to maintain an

9

action for partition." (48 Cal.Jur.3d (2025) Right of Heirs and Personal Representatives, § 41, citing *Bank of Ukiah, supra,* 143 Cal. 265.)[7]

The siblings advance several theories in an attempt to negate the effect of their lack of a confirmed ownership interest in the property. They construe Catello's naming of two of the siblings as defendants in her quiet title action as a concession of their standing because, in their view, by joining them in her lawsuit she recognized their rights in the property. Relying on a similar theory, the siblings cast their partition claim as a compulsory counterclaim that they had to file now to avoid potentially waiving it under section 426.30.

We reject these two arguments because standing for the siblings' partition claim is not defined by Catello. Rather, they must demonstrate standing when called upon to do so (*Mendoza, supra,* 6 Cal.App.5th at p. 810), which may properly occur for the first time on appeal (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438). Moreover, the siblings misunderstand the pleading requirements for, and purpose of, a quiet title action. Catello was *required* to name the siblings as defendants in her quiet title action because they were persons she knew might have claims to the property adverse to hers. (§ 761.020, subd. (c).) But the whole point of her quiet title action was to *defeat* the siblings' adverse claims by showing that

---

[7]     The siblings argue that *Bank of Ukiah* should be given no weight because it predates the enactment of Probate Code 7000. Aside from the fact that we cannot simply disregard a Supreme Court decision (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455), we must assume that the Legislature was aware of this case when it enacted Probate Code section 9823 to vest in the personal representative— *but not the possible heirs or devisees*—the right to partition a property where an interest is not subject to probate. (*Arthur Andersen v. Superior Court* (1998) 67 Cal.App.4th 1481, 1500–1501 [Legislature is presumed to be aware of relevant common law].) In any case, the cited portion of *Bank of Ukiah* is fully consistent with these later-enacted Probate Code sections.

they had no rights in the property, which is the exact opposite of a concession that they had property interests.

This misunderstanding also undercuts the siblings' argument that Catello should be judicially estopped from raising the standing claim. "Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) We have discretion to bar a party from taking a contrary position on appeal when "(1) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (2) the two positions are totally inconsistent; and (3) the first position was not taken as a result of ignorance, fraud, or mistake." (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 121.) As explained, Catello has not taken inconsistent positions regarding the siblings' rights in the property. But even if she had, we have not been presented with any facts indicating she did so to deliberately try to game the system, a showing required to meet the doctrine's third element. (*Jackson*, at p. 181 [judicial estoppel is meant "to project against a litigant playing fast and loose with the courts"]; *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1000 ["judicial estoppel raises factual issues"].)

The siblings also maintain that they could bring their partition claim because heirs may convey or encumber their expected interests in an estate before the final order of distribution issues. Although the underlying premise for the argument—that an heir may convey or encumber an expected interest in an estate, subject to administration—is correct (see, e.g., *Reed v. Hayward* (1943) 23 Cal.2d 336, 342), the question whether a potential heir can encumber a contingent interest vis-à-vis a third party is entirely distinct

11

from whether a contingent unconfirmed interest is sufficient to confer standing to partition a property where, as here, another interest in the property (Catello's) is not subject to probate. There is no need to recognize the standing of an expected heir in this circumstance because Probate Code section 9823 expressly authorizes the personal representative—who is responsible for marshalling and managing the estate's assets for the benefit of whomever will receive them (Prob. Code, § 9650 et seq.)—to bring a partition claim in superior court. (Ross et al., Cal. Practice Guide: Probate (The Rutter Group 2024) ¶ 14:226.) The siblings provide no authority for the proposition that an heir with only a contingent interest in a property enjoys this same right.

Finally, an affirmance is also required, according to the siblings, because a stipulation they entered into with the personal representative after they filed their claim conferred "standing to pursue the partition claims on behalf of Decedent's estate."[8] We disagree. As an initial matter, this argument is self-defeating because a party bringing a partition claim must have standing from its outset. (§ 872.210, subd. (a)(2) [ownership required to "commence[] and maintain[]" a partition action].) But more to the siblings' point, "[e]very action must be prosecuted in the name of the real party in

---

[8] The siblings omitted this stipulation from the appellate record and request that we take judicial notice of it under California Rules of Court, rule 8.252. The face of the stipulation indicates that it was either filed or lodged in the superior court. Thus, we construe the siblings' motion as one to augment the record under California Rules of Court, rule 8.155, which we grant. This stipulation states in relevant part, "The administrator, on behalf of the estate, does not plan to participate in the active litigation pending in this case and defers the handling of such matters to [the siblings]. [¶] The administrator, solely in her capacity as administer [*sic*] of the estate, agrees to be bound by whatever order of judgment is issued by the court in this case."

interest, *except as otherwise provided by statute.*"  (§ 367, italics added.)
Probate code section 9823 is one such exception to this general rule.  The
siblings fail to cite any legal authority—statutory or otherwise—to support
their position that a personal representative can deputize a perceived heir
to prosecute a partition claim on behalf of a decedent's estate.  In any event,
the personal representative here did not purport to appoint the siblings as
designees or assign the partition claim.[9]  Rather, she merely "defer[red]" to
the siblings and "agree[d] to be bound" by any judgment.  Consequently,
this stipulation fails to cure the standing defect Catello has brought to our
attention.

**DISPOSITION**

Because the partition action was brought by parties without standing
to prosecute it, the interlocutory judgment is reversed with directions to
dismiss the case.  The parties shall bear their own costs on appeal.

DATO, Acting P. J.

WE CONCUR:

DO, J.

CASTILLO, J.

---

9      Although some legal claims may be assigned (see, e.g., Civ. Code,
§ 954), we have been unable to locate any statutory authority that would
allow the assignment of an estate's partition claim.